People v. Plummer.

---

## THE PEOPLE v. PLUMMER.

It is not error in the Court, on a trial for murder, to postpone the consideration of a motion on the part of the defendant, for a change of venue, until an attempt is made to empannel a jury.

Where a motion is thus postponed, and counsel for prisoner afterwards declines, on the intimation of the Court, to renew the motion, he cannot take advantage, on appeal, of the failure of the Court to order a change of venue.

The declaration of a juror, before trial, that "the people ought to take prisoner out of jail and hang him," renders him incompetent to try the case, and where a verdict of guilty has been found by such juror, the Court should grant a new trial.

APPEAL from the District Court of the Fourteenth Judicial District, County of Nevada.

The defendant was indicted and convicted of the crime of murder, in the second degree. After the defendant was arraigned and plead, his counsel moved the Court for a change of venue. This motion was based on the ground that a fair and impartial trial could not be had in the county, owing to the prejudice and feeling existing against the defendant, and was supported by a number of affidavits. The motion was argued, and taken under advisement by the Court. The Court then adjourned until the next day. On the opening of the Court the next day an order was made overruling the motion for a change of venue "until such time as an effort shall have been made to empannel a jury, with leave of defendant's counsel to renew the motion, if it shall then appear that an impartial jury cannot be found." One hundred persons were examined as jurors, and only seven were found qualified to serve. The Court thereupon asked the counsel for the defendant if they wished to renew the motion for a change of venue, to which they replied in the negative. Other persons were summoned, and subsequently a jury was obtained.

The defendant, after the verdict of the jury, moved the Court for a new trial, and on such motion produced, and read in evidence, certain affidavits, together with the testimony of a number of witnesses, showing that two of the jurors had formed and expressed an opinion against the defendant previous to the trial. One of the jurors had said, in the presence of a number of persons, and in a public place, that " the people of Nevada ought to take Henry Plummer out of jail and hang him." Another of the jurors said " that Plummer ought to be hung, and that if he was at the Bay he would be hung before night." Another witness

heard this same juror (Denny) say, at a different time and place, "if Plummer got his dues, they would hang him." Witness testified that the juror, Denny, "seemed down on all men who were situated as Plummer." The Court below refused to grant a new trial, and the defendant appealed to this Court.

*McConnell & Niles* for Appellant.

The Court ought to have awarded a new trial upon defendant's motion.

The grounds upon which we predicate our claim to a new trial may all be reduced to three heads, viz.:

1. The verdict is not the result of a fair expression of opinion on the part of all the jurors.

2. It is contrary to the law and the evidence.

3. The Court erred in matters of law to the prejudice of the defendant.

Upon referring to the section of our criminal practice in regard to new trials the Court will observe that certain grounds are specified upon which a new trial may be granted. See § 440 Crim. Prac. Act, Wood's Dig., p. 304.

We were in some doubt at first, whether our objection to the jurors Getchel, Denny, and Jameison, came within any of the grounds there mentioned. But upon reflecting that the only mode by which we could avail ourselves of the objection, was by motion for a new trial—and that such was the universal practice elsewhere, we became convinced that though not distinctly expressed by the statute as an independent ground for a new trial—still it₀ was by a fair construction of the law included within those grounds which are expressed.

The three jurors mentioned above, (Getchel, Denny, and Jameison,) at the time of the empannelment of the jury, each qualified himself by swearing that he had not formed or expressed an opinion as to the guilt or innocence of the defendant, and that he had no bias against him.

After the trial, however, it became known that each of them had not only formed but expressed a most decided opinion that the defendant was guilty of the crime with which he stood charged.

Having incorporated this as one of our grounds for a new trial, we filed affidavits to substantiate the fact.

In regard to the juror Getchel, we introduced the affidavits of Wm. F. Pulse and of Calvin Hall.

In regard to Denny, we introduced the affidavits of S. E. Southwick.

In regard to Jameison, the affidavit of F. M. Worsham.

Two of the accused jurors, (Getchel and Denny,) made affidavits denying the statements contained in the affidavits presented on the part of the defendant. These affidavits, together with

one from the defendant himself, denying his previous knowledge of the sentiments of the three jurors, are incorporated in the statement for a new trial.

But witnesses were also called to the same matters, and their evidence reduced to writing, was also adopted, and now forms part of the statement.

These witnesses were Pulse, John Avery, S. E. Southwick, Robert Smith, E. C. Dixon, and Alexander Frazier.

The evidence of these different persons is very distinct and pointed.

Pulse and Hall swear most positively—in affidavits, and as witnesses—that the juror Getchel had expressed a most decided and unqualified opinion of the guilt of the defendant.   According to their evidence, this just-minded juror and humane man had publicly avowed the opinion that "the people of Nevada ought to take Henry Plummer out of jail and hang him."

His friend Avery, in his oral testimony, admits that he made use of the same, or very similar expressions.

It is true, Getchel himself denies that he made such statements—but his affidavit is entitled to no greater respect than his answers to defendant's counsel, when examined by them as to his competency to serve as a juror.   He then swore that he had neither formed nor expressed an opinion as to the guilt or innocence of defendant, and his affidavit is a simple rehash of the same statement.

We prove the charge against him by three witnesses: Pulse, Hall, and Avery.   Had there been but one, there might have been a pretext for saying, that as there was merely the oath of one man against the oath of another, the presumption would be in favor of the juror's competency.   But even in that case, we think the law *in favorum vitæ* would believe the witness, and disregard the declaration of the juror.

But here there were more witnesses than would be necessary by law to convict the juror of perjury, had he been indicted for that crime.   Surely then, there were enough in a case where a human life was in actual jeopardy, to convince the Court of the truth of the charge imputed to the juror.   In all of the cases to which we shall refer the Court, it will be found that the Court disregarded the oath of the impeached juror.

The juror Denny stated publicly, that "Henry Plummer," (the defendant,) "ought to be hung."   And on another occasion —the day after the difficulty—he remarked that "Plummer ought to be hung, and that if he was at the Bay he would be hung before night."

This man appears to have resided in San Francisco during a period of its history which every honest citizen ought to blush to think of—and to have imbibed, in that hot-bed of treason and lawless violence, all the bitter prejudice against a man accused

of crime which at that time prevailed there, together with an ardent admiration for their new and summary modes of procedure and punishment. Such men as he and Getchel ought not to live in a free and civilized country—much less to sit in judgment upon the lives and liberties of its citizens. With such men, to accuse, is to convict—and no evidence, however forcible, if it tended to the benefit of the prisoner, would be regarded.

As regards the competency of Jameison, we produced but a single affidavit—but we think we may leave this juror entirely out of the argument, and rely alone upon our proofs respecting Getchel and Denny.

The substance of the declarations imputed to both jurors is, that Henry Plummer ought to be hung for the act with which he stands charged.

It is true, this is not in terms an expression of an opinion of his guilt. But surely, it embodies within itself such an expression of opinion. For if a man ought to be hanged for an act, it follows that he is guilty of such act. A different construction of their language would place these jurors in the singular and unenviable position of believing and hoping that a man might be hanged, against whom no crime could be shown; in which case it would be regarded as an evidence of malice against the defendant. But whether regarded as the expression of a settled opinion upon the merits of the case, or as an effusion of hatred and ill-will towards the defendant, it would, as we shall show, be equally a good ground for setting aside the verdict, and awarding a new trial.

The expressions used by the jurors, may, with propriety, be referred to two different heads, viz.:

1. Of bias or prejudice against the defendant personally, amounting to ill-will; and,

2. A settled preconceived opinion as to the merits of the case.

The expressions attributed to the jurors are precisely such as we would expect from a man who stood to the defendant in the attitude of a deadly foe, and who, in the climax of his hatred, is willing and anxious to see him sacrificed by means of a judicial murder, or a mob-law murder, without the slightest regard to the question of his guilt or innocence.

The law permits no such malicious sentiments to fill the breasts of those to whose discretion the lives of our people are confided.

In the case of The State v. Hopkins, 1 Bay's R., 372, the foreman of the jury had said that he " came from home to hang every damned counterfeiting rascal," and that he " was determined to hang the prisoner, at all events." This was held to be a sufficient ground for a new trial.

Graham & Waterman, in their work on New Trials, speaking of that case, say that " it is one of the clearest cases of unfitness of the juror on record." 2 Gra. & Wat. on N. T., 383.

20

In Busick v. The State, 19 Ohio, 198, a juror had made up his mind that the accused was guilty, from statements made to him by one of the grand jury, and stated, that "if the testimony did not hang him (the accused) then there was no use of laws." The Supreme Court of Ohio held him to be totally incompetent, and granted a new trial.

The expressions used by Getchel and Denny seem to us equally as strong as those used by the juror in the case last cited. The difference between them, if any, seems to be in favor of the Ohio juror. For he had at least made up an opinion—it may be an honest opinion—as to the prisoner's guilt; while Getchel and Denny seem not to have troubled themselves much as to whether Plummer was really guilty. They appear to have doggedly come to the conclusion, that he ought to hang, at all events, and that the people would be fully justified in resorting to mob law to gratify their vengeance or their appetite for blood.

We would here particularly call the attention of this Court to the comments of Messrs. Graham & Waterman, upon the case of Busick v. The State. 2 Gra. & Wat. on New Trials, 383, 384, notes.

It will be found that we have taken precisely the same steps to fasten disqualification on the jurors, as were taken in that case. There the juror swore at the time he was empanneled, that he had formed no opinion, etc., just as Denny and Getchel did in this case, which led Spaulding, J., to observe, when passing upon the case, that he was almost constrained to say "that the juror was incompetent for the want of a sound moral sense."

In Monroe v. The State, 5 Georgia, 85, one of the jurors who tried the defendant, had said, that "from what he knew, he would stretch the prisoner."

The Court granted a new trial—Mr. Justice Lumpkin remarking at the time, that "to convict one capitally under such circumstances, is to perpetrate an offence little short of murder itself."

And again, "the law requires that jurors should be *omni exceptione majores*, not liable to any objection on account of malice, illwill, hatred, revenge, prejudgment, or the like." The entire opinion of Mr. Justice Lumpkin is eminently worthy of careful study, as it explains, in a clear and accurate manner, the law respecting the qualifications of jurors.

In Sellers v. The People, 3 Scammon, Ill., 412, a juror, some three or four weeks before the trial, had stated that "the prisoner would and ought to be hung; that salt could not save him; and that there was no law to clear him." But afterwards, he went to the jail, and told the prisoner that he "ought not to be hung—and that if he were on the jury he should not hang." The Supreme Court of Illinois granted a new trial. It will be observed that Judge Douglas, who gave the opinion of the Court,

apparently places the decision on the ground of "deep-seated malice, concealed under the mask of friendship, destroying its victim by adding treachery to perjury." He assumed that the conduct of the juror had been false and treacherous. Upon this, Messrs. Graham & Waterman remark, "whether such be a legitimate inference from the facts, may be a matter of some doubt. It was, however, highly proper to put a severe construction upon the juror's declarations and acts, and if there was even a remote possibility of his being an improper person, to award to the prisoner a new trial."

We would remark of the Illinois case, that it is very similar to the case at bar in many respects. There, the juror had expressed an opinion both for and against the prisoner. Here, it is claimed that both Denny and Getchel expressed opinions, not, it is true, favorable to the defendant, but expressive of their freedom from bias. It is said that Denny remarked when he started from home to attend the Court, "that he supposed he would be selected as a juror, inasmuch as he had not made up or expressed an opinion of the case."

In the Illinois case, the Court regarded the contradictory opinions as conclusive evidence of treachery on the part of the juror. By the same rule, if applied to this case, Denny and Getchel were guilty of fraud still more gross towards the defendant, and a new trial should be granted on that ground.

In Cody v. The State, 3 Howard's Miss. Rep., 27, one of the jurors having declared before the trial, that if he should be on the jury, "he did not think he could clear the defendant, but would be bound to find him guilty," the Supreme Court ordered a new trial.

One or two cases may be found which seem to imply a different rule. But they seem to have been illy considered and badly digested decisions.

In Howerton v. The State, 1 Meigs Tenn. R., 263, the defendant, who had been convicted of horse-stealing, asked for a new trial, on the ground that "one of the jurors, before being called had expressed an opinion that the defendant was guilty."

Mr. Justice Reese, in delivering the opinion of the Court, said: "the loose impressions and conversations of a juror, founded upon rumor, would not, if disclosed by him or others to the Court, have the effect to set him aside as incompetent, and might therefore be readily forgotten, or even properly pretermitted by the juror when upon oath, as not deserving to be regarded as the formation or expression of opinions and convictions."

These are singular sentiments to proceed from a learned Supreme Bench. It is precisely the "loose impressions and conversations," so lightly regarded by Mr. Justice Reese, that go to make up a case of fixed bias, prejudice or ill-will. In saying that the juror would be justified in "pretermitting" such conver-

sations, etc., he evidently makes the juror, and not the Court, the sole judge of their importance and legal operation, besides opening the door, if not awarding a premium for any amount of moral perjury from jurors so circumstanced.

The learned authors of the work on New Trials severely censure this decision of tho Tennessee Court. "We can not," say they, "reconcile the foregoing decision with our ideas of common justice. The opinion expressed by the juror as to defendant's guilt, was as positive as language could make it. It is evident that he not only condemned the accused before trial, but that he entertained a strong prejudice against him. How preposterous to suppose that such a juror could calmly and dispassionately hear and weigh the testimony and a true verdict give," etc. "It seems that the juror, upon his examination, denied that he had made the alleged declaration, or that he had formed an opinion ;" (just as Getchel, Denny, and Jameison swore upon examination in this case,) "and tho Court based its refusal to grant a new trial upon the ground that the oath of a witness or witnesses ought not to countervail the oath of a juror. It is possible that the Court did not believe that the juror made the declaration. We cannot, however, help thinking that the ends of justice would have been subserved by granting a new trial." 2 Graham & Waterman on N. T., pp. 392, 393.

In The State v. Spencer, 1 Zabriskie N. J. Rep., 196, the Court held that a "declaration to disqualify a juror in a capital case, must be such an one as implies malice or ill-will against the prisoner." Upon this case Messrs. Graham & Waterman comment as follows: "The learned Chief Justice" (Hornblower,) "could not mean that the declaration must necessarily proceed from a a spiteful, malignant, or revengeful disposition; but only that it must indicate that constructive malice which is the offspring of an ill-regulated mind. To hold that a juror shall be competent unless his prepossession is so strong as to amount to malice, is only to exclude him when his integrity can be impeached; for no upright man would consent to sit as a juror under such circumstances, and his taking a seat in the jury-box would imply a dishonest and malevolent purpose."

They then cite from The State v. Bennett, 2 Devereux & Batt. N. C. R., 196. In this case Judge Gaston remarks: "there are unquestionably occasions upon which opinions may be honestly formed and honestly expressed, manifesting a bias of judgment not referable to personal partiality or malevolence. Many must occur in the discharge of public duties, or the duties of friendship, and many even in ordinary social intercourse, to justify and almost compel the avowal of such opinions, without any personal ill-will, or a desire to create prejudice, or with the expectation that he who makes them known will have to sit in judgment

upon the subject to which they refer." 2 Graham & Waterman on N. T., 396, 398.

In The State v. Scott, (3 Brevard. R., p. 304,) which was a trial for murder, one of the jurors said, a few minutes before he was sworn, "he could not serve, because he had made up his opinion," which was unknown to the prisoner at the time he accepted the juror. The Court refused a new trial, upon the very singular ground that when the juror made such avowal he was not under oath, and that he had denied having an opinion when questioned by defendant. Upon this, Graham & Waterman remark that "a much better reason for the action of the Court would have been that the alleged statement of the juror was sworn to by a single witness."

In the case at bar, however, the statements of the jurors Denny and Getchel were sworn to by three witnesses to each. It is evident that if the reason assigned by the Court in The State v. Scott, be a valid one, no verdict can be set aside by reason of the previous ill-will of the jurors, for such ill-will can only be established by the statements of the juror himself.

In addition to these authorities, we call the Court's attention to the following, viz.: Freeman v. The People, 4 Denio., p. 9, Sturdley v. Hall, 22 Maine R., p. 198, Bishop v. The State, 9 Georgia R., p. 121, and particularly to 2 Graham & Waterman, on New Trials, pp. 382–407.

The case of Bishop v. The State, 9 Georgia R., p. 121, is strikingly similar to the case at bar. The juror's declaration was, that "if he was on the jury he would hang the prisoner,"—which being proved by three affidavits, the Court granted a new trial.

The case of Sturdley v. Hall, 22 Maine R., p. 198, though a civil case, is also strongly in point.

See, in addition, the case of The United States v. Fries, 3 Dallas R., 517, principally as illustrating the mode of procedure in such cases. It is also a pointed authority in regard to the effect of such previous declarations on the part of a juror.

This brings us to the consideration of the effect of the statements made by the jurors, when regarded in the light of expressions of preconceived opinions of the guilt of the defendant.

No man is a good juror, especially in a capital case, who entertains inimical sentiments towards the defendant, or has formed or expressed an opinion of his guilt. In the language of the eminent Judge Woodbury, "it is highly important that the conflicting rights of individuals should be adjusted by jurors as impartial as the lot of humanity will admit. Their minds should be as free as 'unsunned snow' from any previous impressions, and should receive no hue but what the law and the evidence at the trial may impart. It is important, too, that parties should be satisfied of their fairness—else a reproach will light on the inval-

uable institution of juries, and general confidence in the administration of justice become weakened." Rollins v. Ames, 2 New Hamp. R., p. 349.

In another case, it is said that "every juror's mind should be as white as paper." Monroe v. The State, 5 Georgia R., p. 85.

In Childers v. Ford, 10 Smede & Marshall R., p. 25, which was a civil case, a new trial was granted because one of the jurors had expressed an opinion before the trial that a certain conveyance, which came in question at the trial, was fraudulent. Upon his examination, as to his qualifications as a juror, he swore that he had not formed nor expressed an opinion; and the Court said that "he lacked the first element of a good juror, veracity."

In Tenny v. Gilchrist, 12 New Hamp. R., p. 462, another civil case, the foreman of the jury had stated to each party (in jest, however, as he claimed,) "that he would lose the case." The plaintiff had said that "the foreman could give him the verdict. if he would," but it appeared that he (the foreman) was the very last man to avow his opinion in the jury-room in favor of plaintiff. But the Court held that he was an improper juror, and granted a new trial.

We have, thus far, cited no case except those in which the fault of the juror, not being discovered till after the trial, was made the ground of a motion for a new trial. We might refer the Court to hundreds of cases where the same points, arising upon challenges to jurors, were ruled in the same way, and it is evident that an objection, good when taken by way of challenge to the juror when he is called and sworn, must be equally good, when, not being discovered before the trial, it is made a ground for a new trial.

In Moss v. The State, 10 Humphrey's R., p. 456, a juror who had formed an opinion upon mere rumor, which he thought would not so far influence his mind but that he could do justice to the prisoner, was held incompetent, because "he had such prepossessions against the defendant as would only yield to the evidence at the trial."

This Court held the same doctrine in the case of The People v. Wallace Gehr, Oct. Term, 1857. 2 Graham & Waterman on New Trials, pp. 407–418.

4. We had also intended to present at length our views in regard to the order of the District Court, overruling our motion to change the place of trial.

But we shall only refer to this point at present, as another argument to fortify our position, that the defendant did not have a fair and impartial trial by a fair and impartial jury—and that this Court is bound in duty, and for the ends of justice, to interpose and save him from the consequences of a verdict, which circumstances will warrant us in calling the result of a "foregone conclusion."

This motion was based upon affidavits from every election precinct in the county.  Some three hundred jurors were summoned to enable us to get twelve men, who pretended that they had not made up their minds definitely as to his guilt, and some of whom entertained the most bitter prejudices against him personally. A clearer case of an unjust verdict can scarcely be imagined. If this defendant is not entitled to come to this Court for redress against a great wrong, disguised by judicial forms, who can be?

*Thomas H. Williams, Attorney-General,* for Respondent.

The learned counsel for appellant have assigned several causes of error, upon which they ask a reversal of the judgment rendered in the Court below, but only urge especially two of them. The first and most important of which is placed under the head of "error in refusing defendant's motion to set aside the verdict, and grant him a new trial."

Various reasons are attempted to be given why this motion should have been granted, some of which, at first blush, would strike one as tenable, but on examination, lose all force.

In their division of causes under this head, the first which is presented is as follows:

"The verdict is not the result of a fair expression of opinion on the part of all the jurors."

Upon examination, it will be found that this objection is intended to apply exclusively to the supposed incompetency of certain jurors, who, it is said, had formed or expressed opinions against the appellant prior to being called as jurors, but on examination upon their "*voir dire,*" disavowed such opinion, etc., the appellant, it is said, being unaware of the opinions of said jurors, until after verdict.

In answer, I submit that this is not a ground for new trial. The statute (Wood's Digest, p. 304, Art. 1679) declares that " the Court has power to grant a new trial in the following cases only," and then follows the enumeration of the cases, to none of which this belongs; to bring it within either of the enumerated causes, would be unwarrantable distortion of the English language.

It may be the practice elsewhere (and should be so here) to grant new trials upon this ground, but it cannot so be in our Courts, because the statute expressly forbids it, and it is not the province of this Court (so long as we have wise Legislatures) to make the law.

It must pronounce the law as it may find it, however great the hardships, leaving the evil to be corrected by some other department of the government.

I make this objection for the purpose of having the practice established, more than for its effect upon this case, for I do not

believe that the facts, when understood, warrant any interference with the judgment.

I am willing to admit, that if such would in any case be good cause for new trial, and if the evidence warranted the conclusion that the jurors Getchel and Denny deliberately uttered the expressions imputed to them by appellant's counsel in their brief, then under the law a new trial should be granted in this case.

But I cannot agree with the learned counsel in their conclusions of fact, and it occurs to me that if they had read Graham & Waterman less, and the evidence more, they might have saved much laborious writing.

A proper analysis of the testimony upon this point is necessary, before an examination of the law is had, and I therefore call attention to such portions of it as legitimately affect the question. And, first, in reference to the juror Getchel, we find the *ex parte* evidence or affidavit of the witness Pulse, in which he says that Getchel declared that "the people ought to take Henry Plummer out of jail and hang him;" afterwards this Pulse was brought before the Court, when an opportunity was had for cross-examination, and his statement differs materially from the affidavit made by him. It seems also that he is asked as to the sentiments he entertains towards the juror Getchel, whom he is attempting to brand as an unprincipled perjurer, and answers that he entertains towards him no enmity; he also states that a number of persons were present and heard Getchel's remarks.

In answer, Mr. Getchel testifies that this statement by Pulse, is "unqualifiedly false," and that Pulse is at enmity with him. Avery speaks of the ill-will between Pulse and Getchell, and says that Getchel stands as high as any man in his neighborhood.

All the facts and circumstances taken together, must satisfy this Court that the affidavit of Pulse does not contain the true facts. If true, it is a little singular that no other witness is brought to sustain him, when he says that a number were present at the remarks.

Calvin Hall, in his affidavit, testifies to a similar statement made by Getchel to that which Pulse swears to; in his testimony before the Court, we find it different, and it is a little remarkable that he and Pulse both place in Getchel's mouth the same language, at different times and places; one has him before the Miner's Hotel, the other near Culver's store.

Getchel also says that Hall's statement, in his affidavit, is false, and that Hall is at enmity with him. Avery says that Hall was at enmity with G., and told him (Avery) that he had never heard G. express any unqualified or decided opinion in regard to the case. I might repeat here as applicable, remarks

made in reference to the attacks upon Getchel by Pulse, and leave the juror in the hands of the Court.

In regard to the juror Denny, the first affidavit charges him with saying in a saloon, that " Plummer ought to be hung," afterwards, upon being examined before the Court, he says that he (witness) remarked that a man who could take another's wife away, and then shoot him down like a dog, ought to be hung," and Denny agreed with him.    This is widely different from his affidavit, and he says that Dixon, among others, was present.

Dixon says that he did not hear any such language, and Denny flatly contradicts him.

Comment in reference to Southwick's testimony is unnecessary.

The answers of the jurors in their affidavits would have been sufficient, without other testimony.    Graham & Waterman, on New Trials, 413, 414, 415.

It may be possible that the jurors uttered, in the presence of the witnesses, some loose expressions in reprobation of the conduct of Plummer, or his attack upon the deceased, which they magnified into the statements contained in their affidavits.    But such expressions, when satisfactorily shown to have been made, would not warrant a new trial.    Graham & Waterman, 417.


Terry, C. J., delivered the opinion of the Court—Field, J., and Burnett, J., concurring.

The defendant was convicted, before the District Court of Nevada county, of the crime of murder in the second degree, and, his application for a new trial having been denied, appeals to this Court.

There are several objections taken to the legality of the mode of empanneling the Grand Jury, as well as to the refusal of the Court to permit certain questions to be asked of individual jurors. which we do not think well taken, nor do we think it is necessary to examine these questions separately or at length, as they involve no principle not already passed upon.

There was no error in postponing the consideration of the application for a change of venue until an attempt was made to empannel a jury, and as the counsel, after a number of persons had been rejected, declined, on the intimation of the Court, to renew his motion, he cannot take advantage of the failure to order a change of venue.

In support of his motion for a new trial, defendant offered evidence to show that certain jurors, who acted in the trial of the cause, were incompetent, from actual bias.

And the question is presented, whether an objection to the competency of a juror can be taken after verdict.    On this point we have no doubt.

One of the dearest rights guarantied by our free Constitution

is that of trial by jury;—the right which every citizen has to demand, that all offences charged against him shall be submitted to a tribunal composed of honest and unprejudiced men, who will do equal and exact justice between the government and the accused, and in order to do this, weigh impartially every fact disclosed by the evidence. This guaranty, long regarded as of inestimable value, would be entirely worthless if persons are admitted in the jury-box who are influenced by passion, ill-will, or prejudice, or who, by reason of having formed an opinion as to the merits of the case, will be incapable of deciding with perfect impartiality.

In Rollins v. Adams, (2 N. H., 349,) Judge Woodbury remarked: "It is highly important that the conflicting rights of individuals should be adjusted by jurors as impartial as the lot of humanity will admit; that their minds should be as free as the unsunned snow from any previous impressions, and should receive no hue but what the law and the evidence at the trial may impart." If this be true of cases between individuals, involving questions of property, with how much greater force does it apply to cases involving the life or liberty of a citizen? In McLean v. The State, (10 Yerg., 241,) the Court said : " The trial by jury has always, in England and in this country, been considered of such vital importance to the security of the life, liberty, and property of the citizen, that great care has been taken to preserve it unimpaired. That the accused may have the full benefit of a judgment by his peers, it is absolutely necessary—

" First, that the minds of the jurors should not have prejudiced his case; second, that no impression should be made to operate on them, except what is derived from the testimony given in Court; and third, that they should continue impartial.

" A trial before a prejudiced jury, or one composed of men who had already prejudged the case, is a mere mockery of justice.

"It is intended that jurors, before acting as such, shall know nothing of the matter in difference, or of the parties; that their minds shall not be preoccupied, but they shall be prepared to receive and to weigh such proofs as may be submitted to them. Unless they do this, it would be better for them to retire and deliberate upon their verdict as soon as they are empanneled, and thus save time, labor, and much expense, as well as spare themselves the hypocrisy of pretending to decide according to law and evidence. The very meaning of the word trial, which is an 'examination by a test,' shows that the triers are to act not upon previously formed opinions, but upon inquiry, first instituted and carried on before them. Moreover, if each juror forms his opinion before taking his seat, the case is, in reality, predetermined by persons who, at the time of making their decision, are not jurors. So that the wholesome restraint of the oath administered to the jurors—the solemn proceedings of the Court—the

opportunity to observe the demeanor of the witnesses—the thorough public sifting and scrutiny of the evidence—the explanations of counsel—the instructions of the Judge, and the deliberations of the jury, enlightened by private discussion after they have retired—are so many useless forms, and the parties have only the appearance of jury trial, without any of its benefits." (2 G. & W., 374, on New Trials.)

Objections to the competence of a juror are not cured by verdict.  " Whatever would be a good ground for a challenge to a juror, if discovered in time, will be cause for granting a new trial, if not discovered till the jury have retired to consider their verdict."   (Hardin, 167 ; 5 Geo., 142.)

" In The State v. Hopkins, (1 Bay, 373,) an affidavit was produced, that the foreman of the jury had on the morning of, and before the trial, said that he had come from home to hang every damned counterfeiting rascal, and that he was determined to hang the prisoner at all events.    This, it was contended, was such an improper piece of conduct on the part of the foreman, as was sufficient to vitiate any verdict, much more so where the life of a citizen was concerned.    The Court were of the opinion that the objection was a good ground for a new trial ; and that it would be difficult to say that it was not so, even if the witness was of a suspicious character.    At all events, it is a doubtful point, in which case it was the duty of the Court to lean on the merciful side, and give the prisoner another chance for a fair trial."

In Busick v. The State, (19 Ohio, 198,) on motion for a new trial, it was shown that one of the jurors who acted on the trial of the case had, before the trial, declared in conversation with one of the grand jury who found the indictment, " if George Busick is not hung, there is no use of law," the Supreme Court held this a sufficient ground for a new trial.

In Monroe v. The State of Georgia, a new trial was granted, on the ground that one of the jurors had declared before trial, that " from what he knew, he would stretch the prisoner."

Lumpkin, J., delivering the opinion of the Supreme Court said : " The law requires that jurors should be omni exceptione majores, not liable to an objection on account of malice, ill-will, revenge, prejudgment, or the like.    If they are under any of these influences, they are certainly improper jurors to try a citizen for his life.    *   *   *    Prisoners have rights, and there are certain legal safeguards which must be preserved immaculate ; the purity of the stream of justice is involved in it.    One of these safeguards is that the jury shall be impartial and unbiased, their minds free from prejudgment.    I must say that he who gets his consent to serve on a jury, when he must know that his mind is utterly disqualified from doing justice between the prisoner and the State, is guilty of gross misconduct.    To convict one under

such circumstances, is to perpetrate an offence little short of murder itself."

In the case of Sellers v. The People, (3 Scam., 412,) one of the jurors, before the trial, had said "that the prisoner would, and ought to be hung," "that nothing could save him, that salt could not save him, and that there was no law to clear him," but afterwards he went to jail and told the prisoner, "that he ought not to be hung. and if he were on the jury he should not be hung." "When sworn on his *voir dire,* stated that he had formed or expressed no opinion." The Supreme Court of Illinois on these facts granted a new trial. Judge Douglas, in delivering the opinion, said : "It would be difficult for any one, in the fullness and freshness of our language, to select, or invent forms of expression which would more clearly and emphatically convey a firm conviction of guilt, and at the same time preclude all hope or possibility of escape on the part of the prisoner. They furnish a strong case, and bring it fully within the authorities cited, and hence establish the incompetency of the juror. Can it be insisted that the juror was impartial; that he possessed that moral perception, that sense of justice, that integrity of character which would qualify him to pass upon the life of a fellow-citizen ? It presents the revolting spectacle of deep-seated malice, concealed under the sacred garb of friendship, destroying its victim by adding treachery to perjury. It is wholly immaterial, for the purposes of this motion, whether the prisoner be guilty or innocent; law, justice, humanity, forbid that he should be deprived of his life by such means, and by a jury thus constituted."

In the case under consideration, it appears that George L. Getchel and J. G. Denny, who acted as jurors on the trial of the defendant, had, on being examined on their *voir dire,* answered satisfactorily, and were accepted as jurors.

After verdict, defendant introduced the affidavits of Pulse and Hall, as to the declarations of Getchel, and the affidavit of S. Southwick as to the declarations of Denny, made before trial. The affidavit of Pulse stated that Getchel, soon after the killing with which defendant was charged, declared that "the people ought to take Plummer out of jail and hang him," and on other occasions expressed a belief that he was guilty of murder.

In addition to the affidavits, witnesses were examined both by the accused and the prosecution, as to the facts alleged. The testimony of the witnesses corroborate the statement in the affidavits, and, we think, clearly establish that such a declaration was made by the juror. In the testimony there is but little conflict. Avery, a witness for the prosecution, and an intimate friend of Getchel, states that he was present at the time alluded to, and that he thinks Getchel said that Plummer ought to be hung; there were several present during the conversation, all of

whom appeared to think Plummer ought to be hung; and though not certain, he thinks the remark was made by Getchel.

Getchel files an affidavit denying the facts stated in the affidavits, but we think this affidavit not sufficient to overthrow the testimony of three witnesses, one of whom was called by the prosecution, and was the intimate friend of the juror. Indeed, it would seem that his affidavit is entitled to no more weight than his solemn declaration on his *voir dire*.

In regard to Denny, the affidavit of Southwick is corroborated by the evidence of R. Smith and Alex. Fraser, and controverted only by the affidavit of the juror.

The remark of Denny, as stated by Southwick, was that "Plummer ought to be hung, and if he was at the Bay he would be hung before night." Smith and Fraser both testify to hearing him say that Plummer ought to be hung.

This conscientious juror does not seem to have troubled himself to inquire whether the defendant was guilty or not; with him, it appears that the accusation was sufficient; in the language of witness Smith, "he appeared to be down on all men situated as Plummer was."

It is clear that neither of these jurors was competent to sit upon the trial of defendant, if indeed they were competent to sit in any case involving the life or liberty of a citizen.

A man who could so far forget his duty as a citizen, and his allegiance to the Constitution, as to openly advocate taking the life of a citizen without the form of law, and deprive him of the chance of a jury trial, would not be likely to stop at any means to secure, under the forms of a legal trial, a result which he had publicly declared ought to be accomplished by an open violation of the law.

Judgment reversed, and a new trial ordered.