PEOPLE, PLAINTIFF AND APPELLEE, v. WYS, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Ponce in a Prosecution for Violation of the Civil Service Law.

No. 1084.—Decided July 9, 1917.

CIVIL SERVICE—INFORMATION—WORDING OF STATUTE.—In an information upon a statute it is not sufficient to set forth the offense in the words of the statute, unless those words' of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished. The public offense should· appear in the information.

ID.—ID.—ID.—If a statute creating an offense fails to set out the facts constituting it sufficiently to apprise the accused of· the precise nature of the charge against him, a more particular statement of the facts will be required in the information.

ID.—PUBLIC EMPLOYEES—CONTRIBUTION FOR POLITICAL PURPOSES.—To ask the members of a political party to contribute financially towards the success of a campaign or the continuance of an organization is a perfectly licit proposal. If the solicitation is uniform, there is no wrong in including members of a party who may be perchance in the civil service; but the employee must not be put ''under an obligation'' to contribute.

ID.—ID.—ID.—VOLUNTARY CONTRIBUTION.—A voluntary contribution by an employee is not prohibited in any sense. The wrong sought to be suppressed is that kind of solicitation which tends to create in the mind of a person in the civil service the fear that his refusal may result in his removal or other prejudice.

ID.—ID.—ID.—INFORMATION.—In this case it was charged that on a certain date prior to the filing of the information, and in a certain city and judicial district the defendant unlawfully and wilfully solicited of a certain public employee, a graded teacher in a public school, a stated quota or contribution for political purposes. Held: That no public offense was charged in the information, inasmuch as no attempt was made to charge that a solicitation was made under the circumstances defined by the statute.

ID.—PUBLIC-SCHOOL TEACHER.—A public-school teacher is an employee in the civil service whether classified or not.

The facts are stated in the opinion.

Mr. Rafael R. Rivera Zayas for the appellant.

Mr. Salvador Mestre, fiscal, for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was a prosecution under section 14 of the Civil Service Law which reads as follows:

"Sec. 14.—That no person in the civil service of Porto Rico shall be under obligations to contribute to a political fund or to render a political service, or be removed or otherwise prejudiced for refusing to do so. Any person soliciting political contributions from public officers or employees shall be subject to a penalty of not exceeding five hundred dollars or to imprisonment not exceeding six months, or both."

The information set up that at some date prior to the presentation of the same or on or about one of the days of January, 1916, in Ponce and within the judicial district of Ponce, defendant Eduardo Wys illegally and voluntarily solicited of J. Federico Maura who was then a public employee, a graded teacher and in active exercise in one of the schools of Ponce, a quota or contribution of $30 for political purposes.

The primary question presented for our consideration, being the same as that arising in a number of other pending appeals under the same section, is whether the information states a public offence. The appellant, among other things, maintains in effect that the words of section 14, *supra,* must be construed together and that the public offence is a solicitation whereby a person in the civil service contributes under undue political pressure or through fear of being removed, or otherwise prejudiced.

Here, however, the alleged sanction of the law is contained in the last sentence of section 14 as follows:

"Any person soliciting political contributions from public officers or employees shall be subject to a penalty not exceeding five hundred dollars or to imprisonment not exceeding six months, or both."

And as the information follows these words the question arises whether it was sufficient to follow the words of the statute. In *United States* v. *Carll,* 105 U. S. 612, the court said:

"In an indictment upon a statute, it is not sufficient to set forth the offence in the words of the statute, unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent. *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Simmons,* 96 *id.* 360; *Commonwealth* v. *Clifford,* 8 Cush. (Mass.) 215; *Commonwealth* v. *Bean,* 11 id. 414; *Commonwealth* v. *Bean,* 14 Gray (Mass.) 52; *Commonwealth* v. *Filburn,* 119 Mass. 207."

Discussing the general subject of when it suffices to follow the statute, Wharton, Criminal Pleading and Practice, 223 (4), says:

"The terms of a statute may be more broad than its intent, in which case the indictment must so differentiate the offense (though this may bring it below the statutory description) as may effectuate the intention of the legislature."

Clark's Criminal Procedure, 266, states the rule and its exception as follows:

"Under a statute punishing any person 'who shall act as the agent of any other person or persons for the sale of intoxicating liquors,' it is not sufficient merely to follow the language of the statute, for this would leave the indictment uncertain. The indictment must go further, and name the person for whom the defendant acted, or aver that his name is unknown. So, also, an indictment under a statute, for disturbing a family by offensive conduct, must allege what constituted the offensive conduct, and not merely follow the language of the act, and indictments under the statutes punishing the obtaining of money by false tokens or pretenses must always set out the particular false tokens or pretenses used. And under a statute making it a crime to break open, or to counsel, aid, or assist in breaking open, any jail or place of confinement, it certainly would not be enough to follow the words of the statute, without specifying how the defendant aided or assisted, or what counsel he gave. And an indictment alleging in the words of the statute that the defendant did knowingly aid a person named in procuring

intoxicating liquor, to be disposed of for other purposes than those recognized as lawful by the laws of the State, is bad for not setting out the facts, and for not alleging that the defendant knew that the liquor was to be disposed of for an unlawful purpose, and for not alleging what that purpose was.''

''It is not sufficient to charge an offence in the language of the statute alone where by its generality it may embrace acts which it was not the intent of the statute to punish.'' 22 Cyc. 343.

In *State* v. *Bierce*, 27 Conn. 319, it was said:

''The principal exception to this general rule respecting statutory offenses is where the words of the statute may, by their generality, embrace cases falling within its literal terms which are not within its meaning and spirit; as for instance, the statute against obtaining property by false pretenses, which is not deemed to include, notwithstanding the generality of the expression used—'by any false pretense'—every such pretense, in popular parlance, but only particular kinds of false pretenses, and where therefore the general averment that the property was obtained by a false pretense, without stating what the pretense was, would not show, what is necessary to be shown in every indictment, that the act intended to be prohibited, must have been committed; and hence, as well as to enable the accused to meet the charge, the pretense must be particularly set forth.''

In accordance with these principles it was held that the malicious destruction of glass in a building must be interpreted and described as the destruction of a part of the building, and that words from the whole context of a statute may have a certain meaning not conveyed by a mere literal transcription. *Commonwealth* v. *Bean*, 11 Cush. 414. In *Commonwealth* v. *Bean*, 14 Gray, 52, the statute first enumerated grazing animals and then made it an offence to permit or suffer the same to stop to feed in the public streets and the court limited the word ''feed'' to ''graze'' as the intent of the statute was to punish grazing and not the mere direct feeding out of a trough or a bucket. Both of the foregoing cases were cited with approval in *United States* v. *Carll*,

*supra.* *State* v. *Carroll,* 73 Atlantic, 780, was a case where the information followed the language of a statute and charged the wilful and unlawful disturbance of a board of aldermen, assembled for a lawful purpose. The court held that the interruption may be caused in a variety of ways, some within and some not within the prohibition of the statute; might arise from conduct inside or outside of the meeting; might arise from the lawful operation of a sawmill or otherwise as well as the deliberate and wilful firing of pistols or cannon; that the statute could not intend to punish for the lawful conduct of a man's business, although it might interrupt or disturb nearby assemblages. The rule that statutes should be followed is not applicable in cases like the one before the court (Conn.) when the language includes a case not within the intent of the statute, citing *State* v. *Bierce,* 27 Conn. 319, *supra; State* v. *Costello,* 62 Conn. 128, 131, 25 Atl. 477.

It is to be noted in passing, although no comment is made in the opinion, that the words "unlawfully and wilfully" in the information furnished no aid.

In *Sellers* v. *State,* 61 So. 486, the statute made it an offence "to shoot a pistol at, into, in, through or against a dwelling house," etc. The court held that to charge a crime the shooting in self-defense should have been excluded by the words of the indictment.

"Whoever with intent to commit a felony breaks and enters a  *   *   *   railroad car of any kind, or building in which valuable things are kept," shall suffer the penalty therein specified, were the words discussed in *State* v. *Durán,* 105 A. S. R. 278, and it was held that the felony must be described. The court also said:

"Where the offense is created by statute and the facts constituting it are fully set out, it is undoubtedly sufficient to charge the offense in the language of the statute without further description: 1 Bishop's Criminal Procedure, sec. 611. But 'in all criminal prosecutions the accused shall have a right  *   *   *   to demand the nature and cause

of the accusation': Me. Const. art. 1, sec. 6. He has a right to insist that the facts alleged to constitute a crime shall be stated in the indictment against him with that reasonable degree of fulness, certainty and precision requisite to enable him to meet the exact charge against him, and to plead any judgment which may be rendered upon it in bar of a subsequent prosecution for the same offense. Hence if a statute creating an offense fails to set out the facts constituting it sufficiently to apprise the accused of the precise nature of the charge against him, a more particular statement of the facts will be required in the indictment. 'And where a mere generic term is used, or where the words of the statute by their generality may embrace cases which fall within the terms but not within the spirit or meaning thereof, the specific facts must be alleged to bring the defendant precisely within the inhibition of the law': 10 Ency. of Pl. & Pr., p. 487; Wharton's Criminal Pleading & Practice, sec. 220. Indeed it is an elementary rule of criminal pleading that every fact or circumstance which is a necessary ingredient in a prima facie case of guilt must be set out in the indictment.''

There are similar pronouncements in California: *People v. Terrill*, 127 Cal. 59; *People v. Schmitz*, 7 Cal. App. 330; *People v. Miles*, 9 Cal. 312. The last-named case was more properly a case of negativing a specific exception in a statute and we quoted it with approval in the case of *People v. Cortés*, 24 P. R. R. 195, the dissenting judges of this court not differing from the principles discussed but maintaining that the exception was negatived by the words of the information before us. The reason is the same in both cases. The public offence must appear in the information and, as *People v. Miles* shows, an information which charges an act which if true may still be innocent states no offence. As apt for the main proposition are *The Abby Dodge*, 223 U. S. 177; *State v. Dodd*, 147 Pac. 9; *Bates v. State*, 31 Ind. 72; *Moulton v. Scully*, 89 Atlantic, 944; *Sarah v. State*, 61 A. D. 544.

The rule to be deduced from the cited cases and the text books is that if there are cases that readily fall without the definition of the statute, such cases must be negatived in the same way as if the exception were contained in the statute

which we have elaborately discussed in the case of *People* v.
*Cortés, supra.*

What was the intention of the legislature in this case? To
punish every case of solicitation of an employee for political
purposes? It is a familiar rule of statutory construction
that other parts of the same statute and even other statutes
in *pari materia* may be looked at to determine the intention
and spirit of an act. In this prosecution it is not necessary
to wander beyond the limits of section 14 itself. Voluntary
contributions by an employee are not forbidden in any sense.
If the legislature wanted to forbid every kind of political
solicitation why did it place the unnecessary preamble? In
that preamble the intention of the legislature is that no per-
son may be removed or prejudiced for failure to contribute
for political purposes. It militates against the idea that the
legislature desired to punish in circumstances where the will
of the employee was not unduly coerced, such as happens
under a multitude of cases where political contributions are
asked. Political parties cannot operate without funds and
while improper practices very frequently exist, there is no
presumption that funds will be misused. To ask all the mem-
bers of a party to contribute financially towards the success
of a campaign or the continuance of an organization is a
perfectly licit proposal. If the solicitation is uniform there
is certainly no wrong in including members of a party who
may perchance be in the civil service. The mischief sought
to be suppressed is the kind of a solicitation that is cal-
culated to induce in the mind of a person in the civil service
a fear that his refusal may cause his removal or otherwise
prejudice him. The employee must not be put ''under an
obligation'' to contribute. The obligation must not be one of
fear of removal or other prejudice. Such circumstances of
enforced contribution may be many and varied but they are
capable of expression by a pleader.

Any doubts that we have of this construction of the
statute must vanish before other considerations, namely, the

freedom of speech and liberty of action in every individual guaranteed by the institutions under which we live and by the Constitution of the United States. We have grave doubts because of these constitutional limitations if the legislature of Porto Rico could absolutely prohibit the solicitation of public employees for political purposes. The reported cases on the subject are not very extensive, but we are confident that no other legislature has attempted to prohibit all solicitations of public employees for political purposes and the reason lies in the fundamental liberty of the individual.

The national legislature limited itself to two classes of cases, namely, solicitations of officials by officials and solicitations within public buildings, sections 11 and 12 of the Act of January 16, 1883. Each of these sections has been upheld by the Supreme Court of the United States. *United States* v. *Curtis*, 106 U. S. 371, *United States* v. *Thayer*, 209 U. S. 39. In the latter case the court through Mr. Justice Holmes, at p. 42, said: "The limits of the act, presumably, were due to what was considered the reasonable and possibly the constitutional freedom of citizens, whether office-holders or not, when in private life, and it may be conjectured that it was upon this ground that an amendment of broader scope was rejected."

Now, while the question of whether Congress could absolutely prohibit the solicitation of employees was not before the court, the language of Mr. Justice Holmes is sufficient to show the court divined that the reason why Congress did not go further was because of a fear that it might transcend its constitutional powers. Section 12, under discussion in the Thayer case, is as follows:

"Sec. 12.—That no person shall, in any room or building occupied in the discharge of official duties by any officer or employee of the United States mentioned in this Act, or in any navy-yard, fort, or arsenal, solicit in any manner whatever, or receive any contribution of money or any other thing of value for any political purpose whatever."

It will be noticed that the statute broadly prohibits solicitation within a building without specifying the class of persons who may not be solicited. Yet we are satisfied that if one citizen not an officer meets another like citizen in the post office and asks for a subscription to a political fund he is guilty of no crime under said section. The court would say that it was the persons in the civil service whom it was the design of the statute to protect. That was evidently the view of the pleader in the Thayer case, *supra,* as the opinion shows that the indictment was in eleven counts, all charging the sending of letters to employees. The pleader there did not think it sufficient to follow the words of the statute. The idea, too, that it was the legitimate protection of employees. in the building is further slightly evidenced by the citation of the earlier case of *Ex parte Curtis,* 106 U. S. 371. The whole scope of that case was the disciplinary power of the Government over its officials. A reading of that case also shows that there is a grave doubt of the extent to which a legislature may go, emphasized by the dissenting opinion of Mr. Justice Bradley.

In *McAuliffe* v. *Mayor, etc., of City of New Bedford,* 29 N. E. 517, an ordinance was upheld prohibiting policemen from soliciting money or aid for political purposes, the court through Mr. Justice Holmes saying that the petitioner might have a constitutional right to talk politics, but that he had no constitutional right to be a policeman.

In *Louthan* v. *Commonwealth,* 52 A. R. 626, a law was declared unconstitutional which attempted to prevent an office-holder directly or indirectly to induce or procure any qualified elector to vote in favor of a particular party, etc., the court considering the law as an infringement of personal rights, and as we understand the opinion, of free speech.

In *State* v. *Pierce,* 158 N. W. 697, an act of the legislature prohibited persons not candidates from going outside of their own county and spending money there for political purposes, the idea of the law, we take it, being to prevent the

infusion of money in remote districts.    The Supreme Court
of Wisconsin declared the law unconstitutional as infringing
liberty of speech.    Other cases and authorities which touch
the question are as follows: *In re Sid Anderson et al.*, 5
A. & E. Annotated Cases, 421; *People* v. *Armstrong*, 73
Mich. 288; 6 R. C. L. 255; Note 32 L. R. A. 829.  If the
statute is to be taken absolutely it might have to be declared
unconstitutional.    In support of its constitutionality the At-
torney General has cited us to various cases where a par-
ticular statute was saved by giving it a limitation within the
spirit of the act.    *Woodward* v. *Fruitvale Sanitary District*,
34 Pac. 239; 41 N. H. 553; *State* v. *Smiley*, 67 L. R. A. 903;
*Smiley* v. *Kansas*, 196 U. S. 447; *The Abby Dodge*, 223 U. S.
166; *Fox* v. *Washington*, 236 U. S. 273.    He concedes that
cases might arise where an act of solicitation could be en-
tirely innocent and outside of the spirit of the law.    The
legislature in passing this act presumably had in mind the
history of legislation in civil service matters and the deci-
sions of the courts and wanted to go as far as it could in
protecting the public employees.    It is the duty of the court
to adopt such an interpretation of an act that will save its
constitutionality.    *People of Porto Rico* v. *Central Fortuna*,
22 P. R. R. 100, and cases cited, and also the cases cited
*supra*.    It has furthermore been laid down by the Supreme
Court of the United States that without declaring an act
unconstitutional the court should put such an interpretation
on an act that will free it from grave doubts of its constitu-
tionality.    *United States* v. *Delaware & Hudson Co.*, 213
U. S. 366; *Lewis Publishing Co.* v. *Morgan*, 229 U. S. 290;
*The Abby Dodge*, 223 U. S. 175.

With the interpretation that we feel bound to give the
act it follows that no public offence was charged inasmuch
as no attempt was made to charge that a solicitation was
attempted under the circumstances defined by the act.
Herein we have not considered the matter but it would be
good pleading on the part of the *fiscal* to allege that a solic-

itation was made by a defendant knowing that a particular person was a public employee. *United States* v. *Carll,* 105 U. S. 612, *supra.*

Another error alleged was that a schoolteacher is not a a person in the civil service. He may or may not be in the classified civil service although we are inclined to think that he is surely in no other branch of the public service than the civil service.

The judgment must be reversed and the defendant discharged.

*Reversed.*

Chief Justice Hernández and Justice Aldrey concurred. Justices del Toro and Hutchison dissented.

### DISSENTING OPINION OF MR. JUSTICE DEL TORO.

This is a prosecution for violation of the Act to regulate and improve the Civil Service of Porto Rico. The information, in so far as pertinent, reads:

"That on a date prior to the filing of this information; that is, on one of the days of the month of January, 1916, in the city of Ponce, which forms a part of the judicial district of Ponce, Porto Rico, defendant Eduardo Wys unlawfully and wilfully solicited a contribution of $30 for political purposes from J. Federico Maura, who at that time was a public employee, a graded teacher of public schools in active service in one of the schools of Ponce."

The statute violated reads as follows:

"That no person in the Civil Service of Porto Rico shall be under obligations to contribute to a political fund or to render a political service, or be removed or otherwise prejudiced for refusing to do so. Any person soliciting political contributions from public officers or employees shall be subject to a penalty of not exceeding five hundred dollars or to imprisonment not exceeding six months, or both." Section 14 of the Act to regulate and improve the Civil Service of Porto Rico, approved in 1907.

The defendant pleaded not guilty and upon trial was convicted and sentenced to pay a fine of one hundred dollars, or in default of its payment to be imprisoned one day for each dollar not paid, the imprisonment not to exceed ninety days. Not being satisfied with the judgment, the defendant, by Attorney Rafael R. Rivera Zayas, took this appeal. The record contains a statement of the case and bill of exceptions.

The learned attorney for the defendant alleges that the lower court committed the following errors:

"1. The lower court erred in overruling the motion of the defendant (p. 3) made prior to the trial for the return of certain private papers, books and other property which had been obtained by means of an illegal search-warrant, a part of the same having been offered in evidence against the defendant by the district attorney and admitted by the court.

"2. The court erred in overruling the motion made by the chairman of the local committee of the Unionist Party of Porto Rico with the same object.

"3. The court erred in convicting the accused on an information which does not set up sufficient facts to constitute a public crime; on entirely insufficient evidence, and by virtue of an erroneous interpretation and application of section 14 of the Civil Service Act.

"4. The court erred in overruling the motion of the defendant (p. 24) to strike out the testimony of witness Maura on the ground that it was impertinent, as well as all the evidence unlawfully obtained and introduced against the defendant."

1 and 2. As regards the first two errors assigned, I will say only that as the search-warrant which is alleged to be illegal is not included in the record, no basis exists for reaching a conclusion.

3. The argument on the third assignment of error is divided into three parts,—(*a*) insufficiency of the information, (*b*) insufficiency of the evidence and (*c*) erroneous interpretation and application of section 14 of the Civil Service Act.

(*a*) It is contended that the information is insufficient

because it does not set up that teacher Maura was at the time a'leged a public employee appointed under the Civil Service of Porto Rico and because it also fails to state that the defendant knew at the time the offense was committed that teacher Maura was a public employee.

As we have seen, it was alleged in the information that Maura "at that time was a public employee, a graded teacher of the public schools employed in one of the schools of Ponce," and, in my opinion, this is sufficient.

The last part of section 14 does not refer to "public officials or employees appointed under the civil service," but to public officials and employees in general; and it is well understood that such specification is not necessary, for in fact all public officials or employees of The People of Porto Rico belong to the civil service, whether classified or unclassified.

As regards the particular cases of public-school teachers, section 52 of the Codified School Law provides that "all teachers in actual service or holding a license to teach, during the period for which said license is valid are considered as officials or employees of the Insular Government. \* \* \*." And the last paragraph of section 4 of the Civil Service Act provides that—

"The Classified Service shall comprise all positions not included in the Unclassified Service, providing, however, that the appointment and removal of the Registrars of Property, of members of the Insular Police force, and of teachers in the public schools, shall continue to be governed by the special laws in force concerning them, and provided that the teachers in the public schools shall be considered as members of the Classified Civil Service for the purposes of promotions within the Department of Education."

This means that teachers of public schools in Porto Rico in actual service, or who hold a valid license to teach, are public officials belonging to the classified civil service for the purposes of promotion within the Department of Education and the unclassified civil service in other cases, their

appointment and removal being governed by the special laws of the branch in which they are employed.

And as to the necessity for expressly setting up in the information that the defendant knew at the time the offense was committed that Maura was a public employee, we will say that such express allegation is necessary only when the law expressly requires it. In view of the wording of the statute violated in this case, the general formula that the offense was unlawfully and wilfully committed and the specification of the integral elements of the offense charged are sufficient.

(b) In my opinion the evidence was complete. Although it does not show that in January, 1916, the defendant demanded for the first time the sum of money which teacher Maura delivered to him, it does show that prior thereto the defendant had repeatedly demanded it from Maura. The criminal act was not really committed in a single moment. It had its preparatory period and its period of consummation; but it can be maintained that the latter period reassumed and condensed in one single, complete and perfect transaction all the steps previously taken. When teacher Maura presented himself on the date specified in the information at the office of the local committee of the political party in power in the municipal government of Ponce to pay the defendant the sum which the latter had repeatedly demanded previously, the defendant, by his conduct and by his acceptance, ratified his previous demands and, in fact, actually solicited the contribution prohibited by the law.

(c) The appellant contends that according to section 14 of the Civil Service Act "a person who is not a member of a school board with power to appoint and remove teachers can not commit the offense defined in the said section."

The appellant reasons as follows in support of his contention:

"Grammatically, this provision of law is a clause with two propositions which, when interlaced, gives us the one dominant unity of thought of the clause.

"This dominant thought is the fundamental objective to which the interpreter of the law directs himself in order to ascertain and discover the intention of the legislator, which is the supreme rule in legal hermeneutics.

\*          \*          \*          \*          \*          \*          \*

"According to these rules, the solicitation to which section 14 refers must be construed in its relation to the preceding part of the section, which provides that no employee of the civil service shall be under obligation to make contributions for political purposes and cannot be removed for refusing to do so. A public employee is under no obligation to contribute; but he may do so voluntarily, and it has been so held by this court in the case of People v. Torres, 17 P. R. R. 81. If the voluntary act of contributing is not an offense, neither can be the mere act, free from coercion or the exercise of authority, of inviting an employee to exercise his will and perform a voluntary act sanctioned by law. The solicitation, therefore, must be of such a nature as to create in the mind of the employee an obligation to contribute, entirely eliminating the free and spontaneous exercise of his will; and in order that the obligation may be of a coercive character, the solicitation must be made by a person having authority to appoint or remove the employee or whose participation in the appointment and removal of the employee is such that in case of refusal the latter could be removed or otherwise prejudiced."

We do not agree with the appellant's contention. In our opinion section 14 contains many provisions which can and should subsist and be construed independently.

The legislators begin by enacting that no person in the Civil Service of Porto Rico shall be under obligation to contribute to a political fund or to render a political service, thus making it possible that the public employees may be detached from all political activity or obligation and devote themselves entirely to the discharge of their duties for the benefit of the community in which they are employed. And the legislators add something. In order to guarantee this

independent attitude on the part of the officials, they pre-
scribe that the officials shall not be removed for refusing to
render a political service or to contribute to a political fund.
It requires no effort to perceive that this provision has
vitality of itself alone. It can subsist and be applied
independently.

But the legislators went further. Entering into the field
of real facts, they understood that the foregoing provision
referring to the officials themselves was not sufficient to
guarantee an independent public service. It was necessary to
prohibit persons under a penalty of punishment from ap-
proaching them in solicitation of contributions for political
purposes, and this was done by means of a provision which
also has vitality of itself alone. If the first part of section
14 were suppressed, the second part could easily stand alone.
It contains a complete idea.

It has been said that if the foregoing construction should
be given to section 14, the second part thereof would be
unconstitutional. We think otherwise. In its wisdom the
legislature considered the practice of soliciting contributions
from public officials pernicious and forbade it. It acted
within its powers. The generality of the prohibitive provi-
sion does not of itself alone render it unconstitutional. The
majority opinion of the court itself cites the case of *United
States* v. *Thayer,* 209 U. S. 39, in which a statute was applied
providing that—

"No person shall, in any room or building occupied in the dis-
charge of official duties by any officer or employee of the United
State mentioned in this Act, or in any navy-yard, fort, or arsenal,
solicit in any manner whatever, or receive any contribution of money
or any other thing of any value for any political purpose whatever."

And if that statute is constitutional, we do not see why
the second provision of section 14 of the Civil Service Act
of Porto Rico, construed independently as we have construed
it, should not be equally so.

But this is not all. Even conceding that the first part of section 14 reveals the spirit in the light of which its second part should be construed and applied, we do not believe that the present case, in which every page of the proceeding shows that the solicitations made by the defendant, an employee of the local committee of the party which had elected the school board whose duty it was to appoint teacher Maura, contained the condition, suggestion, or threat that in order to continue in his position without molestation it was necessary to make the contribution solicited, is the proper one in which to pass upon the constitutionality of the law. If at any time there should come up to this court a case in which a person should be accused of acting absolutely without malice, we should then consider and decide whether such a case could be regarded as coming within the statute or whether or not the statute is constitutional.

In the case of *Woodward* v. *Fruitvale Sanitary District,* the Supreme Court of California said—

"In passing upon the constitutionality of the statute we are not required to imagine some possible contingency in which its provisions may conflict with the constitution or with other statutes, but to determine whether, in its general scope and in the manner provided for its enforcement, it is within the province of the law-making power. The act of March 7, 1887, to provide for the organization and government of irrigation districts has been repeatedly held constitutional. (*Turlock Irrigation District* v. *Williams,* 76 Cal. 360; *Central Irrigation District* v. *De Lappe,* 79 Cal. 351; *In re Madera Irrigation District,* 92 Cal. 296, 27 Am. St. Rep. 106.) Yet we can imagine the formation of an irrigation district under that statute with its boundaries confined to the limits of an incorporated city or to those of a swamp land district where irrigation would be productive of injury and of no benefit. Should such a case arise, it may well be that it would be held that the facts showed that the case was not within the reason of the law, and hence not subject to its provisions. It would not, however, follow that the law was unconstitutional." 99 Cal. 554.

And in the case of *State* v. *Smiley,* the Supreme Court of Kansas expressed itself as follows:

"It is not a matter of concern to us that the general language of the statute under consideration may apply to classes of persons who should not have been comprehended therein, and who may have a standing in court to claim exception therefrom. Their cases can be attended to when presented in due form." 67 L. R. A. 908.

In affirming that decision of the Supreme Court of Kansas the Supreme Court of the United States, by Mr. Justice Brewer, said:

"It may be conceded for the purposes of this case that the language of the first section is broad enough to include acts beyond the police power of the State and the punishment of which would unduly infringe upon the freedom of contract. At any rate we shall not attempt to enter into any consideration of that question. The Supreme Court of the State held that the acts charged and proved against the defendant were clearly within the terms of the statute, as well as within the police power of the State; and that the statute could be sustained as a prohibition of those acts irrespective of the question whether its language was broad enough to include acts and conduct which the legislature could not rightfully restrain." 196 U. S. 454-55.

We cannot agree with the defendant that the court should have stricken out the testimony of the public-school teacher who was solicited. Said testimony is the most complete evidence introduced by the district attorney and although it refers to many facts prior to the commission of the offense, they are all of the same nature and directly or indirectly related thereto.

As to the admission in evidence of the documents which were seized in the office of the committee of the political party to which the defendant belonged, it will suffice to repeat what we said in considering the first two errors assigned. Besides, when the objection was made it was too late to enable the court to inquire into the manner in which the said documents had come into the possession of the district attorney. See *People* v. *Cerecedo,* 21 P. R. R. 57, and cases there cited.

In view of the foregoing, the judgment appealed from should be affirmed

I am authorized to state that Mr. Justice Hutchison has read this opinion and agrees with its general tenor.