## UNITED STATES *v.* THAYER.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE
NORTHERN DISTRICT OF TEXAS.

No. 390.  Argued February 25, 1908.—Decided March 9, 1908.

A man may sometimes be punished in person where he has brought consequences to pass, although he was not there in person. *In re Palliser*, 136 U. S. 257.

A solicitation of funds for campaign purposes made by letter in violation of § 12 of the Civil Service Act of January 16, 1883, c. 27, 22 Stat. 403, is not complete until the letter is delivered to the person from whom the contribution is solicited, and if the letter is received by one within a building or room described in § 12 of the act the solicitation is in that place and the sender of the letter commits the prohibited offense in the prohibited place.

154 Fed. Rep. 508, reversed.

THE facts are stated in the opinion.

*The Attorney General* and *Mr. Assistant Attorney General Cooley* for plaintiff in error:

The act of mailing the letter soliciting a contribution for

political purposes, was, under the circumstances of this case, one which Congress intended to prohibit, and the court will place such reasonable construction on the statute of Congress as tends to give effect to that intention. *United States* v. *Lacher,* 134 U. S. 624, 628; *Johnson* v. *United States,* 196 U. S. 1.

The act of mailing the letter is also within the letter of the statute. There is nothing in § 12 making the physical presence of the person soliciting within the Federal building an essential element of the offense. The act of soliciting was completed when the letter was received and read by the person to whom it was addressed and to whose mind the demand for money therein contained was addressed. Wharton, Conflict of Laws, §§ 825, 826; Hobart's Rep. (1st Am. ed.) p. 152; *Clutterbuck* v. *Chaffers,* 1 Starkie, 471; *The King* v. *Burdett,* 4 B. & A. 95; *The King* v. *Johnston,* 7 East, 65, 68; *In re Palliser,* 136 U. S. 257, and cases cited; *Horner* v. *United States,* 143 U. S. 207, 214; *Burton* v. *United States,* 202 U. S. 344; *People* v. *Rathbun,* 21 Wend. 509, 529; *Simpson* v. *State,* 92 Georgia, 41, 43; *People* v. *Adams,* 3 Denio, 190, 207; *State* v. *Grady,* 34 Connecticut, 118, 130.

The general effect of these numerous decisions is that the offense is committed at the place where the unlawful act takes effect. If, as seems clear, Congress intended to prohibit the demand of political assessments in Federal buildings, it is a matter of no consequence whether the defendant in making his demands for contributions to the Republican campaign fund was actually in the building or not. He willfully and knowingly set in motion an agency which resulted in a demand on a Government officer in a Government building, and on well-settled principles it must be held that he committed the offense on forbidden ground.

*Mr. J. M. McCormick,* with whom *Mr. F. M. Etheridge* was on the brief, for defendant in error:

The legislative history of the act of Congress in question

herein, shows that it was not the intention to prohibit the writing by a private citizen of a letter soliciting a political contribution, which is by him enveloped, stamped, addressed and deposited in the United States mail with an intent that the addressee shall read the same in a public building. Cong. Rec., vol. 14, 650, 866.

The intent of Congress in enacting § 12 is the law. And before a violation thereof can arise, there must be acts contravening this intent, which are so clearly forbidden by it as to charge notice to the citizen that they are unlawful. The section under discussion creates a crime theretofore unknown to the law. Laws which create crime ought to be so explicit that all men subject to their penalties may know what acts it is their duty to avoid. *United States* v. *Sharp*, Pet. C. C. 118; *United States* v. *Brewer*, 139 U. S. 288. See also *United States* v. *Wiltberger*, 5 Wheat. 76; *United States* v. *Morris*, 14 Pet. 464; *American Fur. Co.* v. *United States*, 2 Pet. 358, 367; *United States* v. *Winn*, 3 Sumner, 209, 211.

The words of § 12, taken in connection with the other sections of the law and the statutes *in pari materia* are not so precise and clear as to compel the construction contended for by the Government which would lead to an absurd consequence. *Commonwealth* v. *Kimball*, 24 Pick. 371.

If the physical presence of the defendant, or his agent or servant in the building at the time the letters containing the solicitations respectively were read, was necessary, then the Government's case falls for the reason that the postal employés are in law deemed the agents of the addressee, and not of the sender of a letter. *Commonwealth* v. *Wood*, 142 Massachusetts, 462, and see also *Regina* v. *Jones*, 4 Cox C. C. 198.

Mr. Justice Holmes delivered the opinion of the court.

This is an indictment for soliciting a contribution of money for political purposes from an employé of the United States in a post office building of the United States occupied by the

employé in the discharge of his duties. By the Civil Service Act of January 16, 1883, c. 27, § 12, 22 Stat. 403, 407, "No person shall, in any room or building occupied in the discharge of official duties by any officer or employé of the United States mentioned in this act, or in any navy-yard, fort, or arsenal, solicit in any manner whatever, or receive any contribution of money or any other thing of any value for any political purpose whatever." By § 15 a penalty is imposed of fine, imprisonment, or both. The indictment is in eleven counts, and charges the sending of letters to employés, which were intended to be received and read by them in the building and were so received and read by them in fact. It is admitted that the defendant was not in the building. There was a demurrer, which was sustained by the District Court on the ground that the case was not within the act. 154 Fed. Rep. 508. The only question argued or intended to be raised is whether the defendant's physical presence in the building was necessary to create the offense.

Of course it is possible to solicit by letter as well as in person. It is equally clear that the person who writes the letter and intentionally puts it in the way of delivery solicits, whether the delivery is accomplished by agents of the writer, by agents of the person addressed, or by independent middlemen, if it takes place in the intended way. It appears to us no more open to doubt that the statute prohibits solicitation by written as well as by spoken words. It forbids all persons to solicit "in any manner whatever." The purpose is wider than that of a notice prohibiting book peddling in a building. It is not, even primarily, to save employés from interruption or annoyance in their business. It is to check a political abuse, which is not different in kind, whether practiced by letter or by word of mouth. The limits of the act, presumably, were due to what was considered the reasonable and possibly the constitutional freedom of citizens, whether officeholders or not, when in private life, and it may be conjectured that it was upon this ground that an amendment of broader scope was

rejected. If the writer of the letter in person had handed it to the man addressed, in the building without a word, and the latter had read it then and there, we suppose that no one would deny that the writer fell within the statute. We can see no distinction between personally delivering the letter and sending it by a servant of the writer. If the solicitation is in the building the statute does not require personal presence, so that the question is narrowed to whether the solicitation alleged took place in the building or outside.

The solicitation was made at some time, somewhere. The time determines the place. It was not complete when the letter was dropped into the post. If the letter had miscarried or had been burned, the defendant would not have accomplished a solicitation. The court below was misled by cases in which, upon an indictment for obtaining money by false pretenses, the crime was held to have been committed at the place where drafts were put into the post by the defrauded person. *Commonwealth* v. *Wood*, 142 Massachusetts, 459, 462; *Regina* v. *Jones*, 4 Cox C. C. 198. But these stand on the analogy of the acceptance by mail of an offer and throw no light. A relation already existed between the parties, and it is because of that relation that posting the letter made the transaction complete. See *Brauer* v. *Shaw*, 168 Massachusetts, 198, 200. Here a relation was to be established, just as there is at the first stage of a contract when an offer is to be made. Whether or not, as Mr. Langdell thinks, nothing less than bringing the offer to the actual consciousness of the person addressed would do, Contr. § 151, certainly putting a letter into a post office is neither an offer nor a solicitation. "An offer is nothing until it is communicated to the party to whom it is made." *Thomson* v. *James*, 18 Ct. of Sess. Cas. (2d Series), 1, 10, 15. Therefore, we repeat, until after the letter had entered the building the offense was not complete, but, when it had been read, the case was not affected by the nature of the intended means by which it was put into the hands of the person addressed. Neither can the case be affected by specu-

lations as to what the position would have been if the receiver had put the letter in his pocket and had read it later at home. Offenses usually depend for their completion upon events that are not wholly within the offender's control and that may turn out in different ways.

No difficulty is raised by the coupling of solicitation and receipt in the statute. If receipt required personal presence, it still would be obvious that "solicit in any manner whatever" was a broader term. But the cases that have been relied upon to establish that the solicitation did not happen in the building, although inadequate for that, do sufficiently show that the money might be received there without the personal presence of the defendant. If, in answer to the defendant's letter, the parties addressed had posted money to him in the building where they were employed, the money undoubtedly would have been received there. To sum up, the defendant solicited money for campaign purposes, he did not solicit until his letter actually was received in the building, he did solicit when it was received and read there, and the solicitation was in the place where the letter was received. We observe that this is the opinion expressed by the Civil Service Commission in a note upon this section, and the principle of our decision is similar to that recognized in several cases in this court. *In re Palliser*, 136 U. S. 257, 266; *Horner v. United States*, 143 U. S. 207, 214; *Burton v. United States*, 202 U.-S. 344, 387, *et seq.* We do not cite them more at length, as the only dispute possible is on the meaning of the particular words that Congress has used.

We may add that this case does not raise the questions presented by an act done in one jurisdiction and producing effects in another which threatens the actor with punishment if it can catch him. Decisions in that class of cases, however, illustrate the indisputable general proposition that a man sometimes may be punished where he has brought consequences to pass, although he was not there in person. They are cited in *In re Palliser, supra.* Here the defendant was

within and subject to the jurisdiction of the United States to the extent of its constitutional power, and the power is not in dispute. *Ex parte Curtis*, 106 U. S. 371; *United States* v. *Newton*, 9 Mackey (D..C.), 226.

*Judgment reversed.*