EL PUEBLO, DEMANDANTE Y APELADO, *v.* WYS, ACUSADO Y
APELANTE.

Apelación procedente de la Corte de Distrito de Ponce en
causa por infracción de la Ley del Servicio Civil.

No. 1084.—Resuelto en julio 9, 1917.

ACUSACIÓN—REQUISITOS DE LA ACUSACIÓN—PALABRAS DEL ESTATUTO.—En una
acusación basada en un estatuto no es suficiente con expresar el delito en las
palabras del estatuto, a menos que esas palabras por sí mismas, completa,
directa y expresamente y sin incertidumbre o ambigüedad expresen todos los
elementos necesarios para constituir el delito que pretende castigarse. El
delito público debe aparecer en la acusación.

ID.—HECHOS QUE CONSTITUYEN EL DELITO—EXPOSICIÓN DETALLADA DE LOS MIS-
MOS.—Si en un estatuto que establece un delito no se expresan los hechos que
lo constituyen de un modo suficiente para que el acusado tenga conocimiento
de la naturaleza precisa del cargo que se le formula contra él, será necesario
que en la acusación se haga una exposición más detallada de los hechos.

SERVICIO CIVIL—EMPLEADOS PÚBLICOS—CONTRIBUCIÓN PARA FINES POLÍTICOS.—
El pedir a los miembros de un partido político que contribuyan con dinero
para el éxito de una campaña o la continuación de una organización, es una
proposición perfectamente lícita. Si la solicitación es uniforme, no hay nada
malo en incluir a miembros de un partido que se encuentran por casualidad
en el servicio civil. Pero no debe ponerse al empleado ''en la obligación de
contribuir.''

ID.—ID.—CONTRIBUCIÓN VOLUNTARIA—AMENAZA O TEMOR DE SEPARACIÓN O PER-
JUICIO.—Las contribuciones voluntarias por parte de un empleado no están
prohibidas en ningún sentido. El daño que se trató de suprimir es aquella
clase de solicitación que tiende a crear en la mente de una persona que está
en el servicio civil el temor de que su negativa pueda dar lugar a su separación
o perjudicarle en otro sentido.

ID.—ACUSACIÓN INSUFICIENTE.—En este caso se imputó al acusado que en cierta
fecha anterior a la presentación de la acusación, en determinada ciudad y
distrito judicial, ilegal y voluntariamente solicitó de cierto empleado público,
profesor graduado de instrucción pública en ejercicio, una cuota o contribu-
ción que se menciona para fines políticos. *Se resolvió:* Que en la acusación
no se imputó ningún delito público por cuanto ni siquiera se intentó alegar
que se trató de hacer una petición bajo las circunstancias expresadas por la
ley.

ID.—PROFESORES DE INSTRUCCIÓN PÚBLICA.—Un profesor de instrucción pública
es un empleado dentro del servicio civil, esté o no clasificado.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Rafael R. Rivera Zayas.*

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

Esta fué una causa seguida de acuerdo con la sección 14 de la Ley del Servicio Civil, que prescribe lo siguiente:

Sección 14.—Ninguna persona perteneciente al Servicio Civil de Puerto Rico tendrá obligación de contribuir con cuota alguna a fondos que se recaudaren con fines políticos, ni prestar servicios políticos; no pudiendo ser destituída ni de otro modo perjudicada, por negarse a ello. Cualquiera persona que solicitare de los funcionarios o empleados públicos contribuciones de carácter político, incurrirá en pena de multa máxima de quinientos dollars, o en cárcel por un término que no exceda de seis meses, o en ambas penas."

Se alega en la acusación que en cierta fecha anterior a su presentación, o sea allá en uno de los días del mes de enero de 1916, en la ciudad de Ponce, que forma parte del Distrito Judicial de Ponce, el acusado Eduardo Wys ilegal y voluntariamente solicitó de J. Federico Maura, que era entonces un empleado público, profesor graduado de instrucción pública, con ejercicio en una de las escuelas de Ponce, una cuota o contribución de $30, para fines políticos.

La cuestión principal que ha sido sometida a nuestra consideración y que es igual a la que surge en un número de otras apelaciones que están pendientes fundadas en la misma sección, es si la acusación alega un delito público. El apelante sostiene en efecto, entre otras cosas, que las palabras de la sección 14, *supra,* deben ser interpretadas conjuntamente y que el delito público es una solicitación por la cual una persona en el servicio civil contribuye bajo indebida presión política o por temor de ser separado, o perjudicado en alguna otra forma.

Sin embargo, en este caso, la supuesta sanción de la ley está contenida en el último párrafo de la sección 14, el cual es como sigue:

"Cualquier persona que solicitare de los funcionarios o empleados públicos contribuciones de carácter político, incurrirá en pena de multa máxima de quinientos dollars, o en cárcel por un término que no excederá de seis meses, o en ambas penas."

Y como en la acusación se siguen estas palabras, la cuestión

que surge es si era suficiente o no seguir las palabras del estatuto. En el caso de *United States* v. *Carll,* 105 U. S. 612, la corte dijo lo siguiente:

"En una acusación basada en un estatuto no es suficiente con expresar el delito en las palabras del estatuto, a menos que esas palabras por sí mismas, completa, directa y expresamente y sin incertidumbre o ambigüedad expresen todos los elementos necesarios para constituir el delito que pretende castigarse; y el hecho de que el estatuto en cuestión, examinado a la luz de la ley común y de otros estatutos sobre la misma cuestión, pone a la corte en condiciones de inferir la intención de la legislatura, no exime de la necesidad de alegar en la acusación todos los hechos necesarios para que el caso quede comprendido dentro de esa intención. *United States* v. *Cruikshank,* 92 U. S. 542; *United States* v. *Simmons,* 96 id. 360; *Commonwealth* v. *Clifford,* 8 Cus. (Mass.) 215; *Commonwealth* v. *Bean,* 11 Id. 414; *Commonwealth* v. *Bean,* 14 Gray (Mass.) 52; *Commonwealth* v. *Filburn,* 119 Mass. 297."

Al discutir la materia en general de cuándo es bastante con seguir al estatuto, Wharton en su obra sobre "Criminal Pleading and Practice," dice lo siguiente:

"Los términos de un estatuto pueden ser más amplios que lo que en ellos se intenta, en cuyo caso la acusación debe establecer así la diferencia (aunque esto pueda hacer que no se describa como en el estatuto) de modo que pueda efectuarse la intención de la legislatura."

Clark en su tratado de Enjuiciamiento Criminal, página 286, expresa la regla y su excepción del modo siguiente:

"De acuerdo con un estatuto que castiga a cualquier persona 'que actúe como agente de cualquier otra persona o personas para la venta de licores intoxicantes' no es suficiente con que se siga meramente el lenguaje del estatuto, pues esto haría que la acusación fuera dudosa. La acusación debe ir más lejos y nombrar a la persona por quien actuó el acusado, o alegar que su nombre es desconocido. De igual modo en una acusación formulada de acuerdo con el estatuto por molestar a una familia con conducta ofensiva debe alegarse qué fué lo que constituyó la conducta ofensiva y no seguir meramente el lenguaje de la ley; y las acusaciones basadas en estatutos que castigan el obtener dinero por medios falsos o falsas simulaciones deben

siempre expresar los medios falsos en particular o simulaciones empleados. Y de acuerdo con un estatuto que castiga como delito el descerrajar cualquier cárcel o sitio de reclusión, o aconsejar, ayudar o auxiliar para que se descerraje cualquier cárcel o sitio de reclusión, ciertamente que no sería bastante con sólo seguir las palabras del estatuto sin especificar de qué modo ayudó o auxilió el acusado, o cuál fué el consejo que le dió. Y una acusación en que se alega con las palabras del estatuto que el acusado ayudó a sabiendas a una persona que se menciona en solicitar licor intoxicante, o disponer del mismo para otros fines que no son los reconocidos como legales por las leyes del Estado, es insuficiente por no exponer los hechos y por no alegar que el acusado sabía que iba a disponer del licor para un fin ilegal, y por no alegar cuál era ese propósito.

"No es suficiente con imputar un delito en el lenguaje del estatuto solamente cuando debido a su generalidad puede comprender actos que el estatuto no tuvo la intención del castigo." 22 Cyc. 343.

En el caso de *State* v. *Bierce,* 27 Conn. 319, se dijo lo siguiente:

"La principal excepción a esta regla general relativa a delitos estatutorios es cuando las palabras del estatuto por su generalidad pueden comprender casos que caen dentro de sus preceptos literales que no están comprendidos en su significado y espíritu; como por ejemplo, el estatuto que castiga el obtener bienes por falsas simulaciones, el cual se considera que no incluye, a pesar de la generalidad de la frase empleada 'por cualquier falsa simulación,' a cada una de semejantes simulaciones en el lenguaje vulgar, sino solamente determinadas clases de falsas simulaciones, y cuando por consiguiente la alegación general que la propiedad fué obtenida mediante falsa simulación, sin alegar en qué consistía la simulación, no demostraría lo que es necesario que se demuestre en toda acusación que el acto que se trata de prohibir debió haberse cometido; y por tanto, y para que el acusado pueda estar en condiciones de afrontar el cargo deberá alegarse particularmente la simulación."

De conformidad con estos principios se resolvió que la destrucción maliciosa de cristales en un edificio debe interpretarse y describirse como la destrucción de una parte del edificio, y que las palabras tomadas de todo el contexto del estatuto pueden tener cierta significación que no se la da la mera transcripción literal. *Commonwealth* v. *Bean,* 11 Cush,

414. En el caso de *Commonwealth* v. *Bean,* 14 Gray, 52 el estatuto enumeraba primero animales que pastaban y luego declaró como delito el permitir o tolerar que se detuviera a los mismos para alimentarlos en las calles públicas, y la corte limitó la palabra alimentar a pastar, puesto que la intención del estatuto era castigar el acto de pastar y no el de alimentar directamente con un cubo o balde. Los anteriores casos ambos fueron citados con aprobación en *United States* v. *Carll, supra. State* v. *Carroll,* 73 Atlantic, 780, fué un caso en que la acusación seguía el lenguaje del estatuto e imputaba la perturbación voluntaria e ilegal de una junta de concejales que se encontraba reunida para un fin legal. La corte resolvió que la interrupción puede causarse de infinidad de modos, algunos de los cuales están comprendidos y otros no en la prohibición del estatuto y que podrían surgir de la conducta observada dentro o fuera de la reunión; que podrían ocasionarse por el trabajo ordinario y legal de una sierra mecánica o de otro modo, lo mismo que por el deliberado y voluntario disparo de pistolas o de un cañón; este estatuto no podía tener la intención de castigar la gestión legal del negocio de un hombre, aunque dicho negocio pudiera interrumpir o molestar a asambleas cercanas. La regla de que deben seguirse los estatutos no es aplicable en casos como el que se presentó a la corte de Connecticut cuando el lenguaje comprende un caso que no está en la intención del estatuto, y se citan los casos de *State* v. *Bierce,* 27 Conn. 319, 320; *State* v. *Castello,* 62 Conn. 128, 131. 25 Atl. 477.

Debe notarse de paso aunque no se hace ningún comentario en la opinión, que las palabras "ilegal y voluntariamente" contenidas en la acusación no suministran ninguna ayuda.

En el caso de *Sellers* v. *State,* 61 So. 486, el estatuto declaraba como delito el "disparar una pistola a, hacia, dentro o contra una casa de vivienda" etc. La corte resolvió que para que la acusación imputara un delito no debió haberse alegado en ella que se había disparado en defensa propia.

"Cualquiera que con la intención de cometer un delito grave (*felony*) rompa y penetre dentro, de * * * un coche de ferrocarril de cualquiera clase, o edificio en donde se guardan cosas de valor," sufrirá la pena que allí se especifica, fueron las palabras discutidas en el caso de *State* v. *Durán,* 105 A. S. R. 278, y se resolvió que el delito grave (*felony*) debe describirse. También la corte dijo lo siguiente:

"Cuando el estatuto establece el delito y los hechos que lo constituyen se expresan completamente es indudablemente suficiente con que se impute el delito en el lenguaje del estatuto sin más descripción: 1. Bishop's Criminal Procedure, sec. 611. Pero 'en todas las causas criminales el acusado tendrá derecho * * * a exigir que se le informe de la naturaleza y origen de la acusación': Me. Const. art. 1, sec. 6. Tiene derecho a insistir que los hechos que se alegan que constituyen un delito se especifiquen en la acusación que contra él se formula con aquel grado razonable de claridad, certeza y precisión necesaria que le ponga en condiciones de poder contestar al verdadero cargo que se le hace y solicitar cualquier sentencia que pueda dictarse por virtud del mismo en defensa de cualquier proceso subsiguiente por el mismo delito. Por tanto, si en un estatuto que establece un delito no se expresan los hechos que lo constituyen de un modo suficiente para que el acusado tenga conocimiento de la naturaleza precisa del cargo que se formula contra él, será necesario que en la acusación se haga una exposición más detallada de los hechos. 'Y cuando se usa un mero término genérico, o cuando las palabras del estatuto por su generalidad pueden comprender casos que caen dentro de los términos pero no dentro del espíritu o significación del mismo, deberán alegarse los hechos específicos para que el acusado quede comprendido precisamente en la prohibición de la ley;' 10 Ency. of Pl. & Pr., p. 487; Wharton's Criminal Pleading & Practice, sec. 220. Es en verdad una regla elemental de las alegaciones criminales que todo hecho o circunstancia que es un elemento necesario en un caso *prima facie* de culpabilidad deberá expresarse en la acusación."

Iguales pronunciamientos existen en California, *People* v. *Terril,* 127 Cal. 59, *People* v. *Schmitz,* 7 Cal. App. 330; *People* v. *Mildes,* 9 Cal. 312. El último de los casos citados fué más propiamente un caso en que se niega una excepción específica en un estatuto y lo citamos con aprobación en el

caso de *People* v. *Cortés,* 24 D. P. R. 208, en el que los jueces disidentes de este tribunal no difieren de los principios discutidos sino que sostienen que la excepción quedó desaprobada por las palabras de la acusación sometida a nuestra consideración. La razón es la misma en ambos casos. El delito público debe aparecer en la acusación y como demuestra el caso de *People* v. *Mildes,* una acusación en que se imputa un hecho que de ser cierto puede aún ser inocente, no imputa ningún delito. Casos pertinentes a la primera proposición son los de *The Abby Dodge,* 223 U. S. 177; *State* v. *Dodd,* 147 Pac. 9; *Bates* v. *State,* 31 Ind. 72; *Moulton* v. *Scully,* 89 Atlantic 944; *Sarah* v. *State,* 61 A. D. 544.

La regla que ha de deducirse de los casos citados y de los libros de texto es la de que si hay casos que fácilmente caen fuera de la definición del estatuto dichos casos tienen que ser negados en la acusación del mismo modo que si la excepción estuviera contenida en el estatuto que hemos discutido extensamente en el caso de *El Pueblo* v. *Cortés, supra.*

¿Cuál fué la intención de la Legislatura en este caso? ¿Castigar todo caso en que se solicita de un empleado una contribución para fines políticos? Es una regla conocida de interpretación estatutoria que deben tenerse en cuenta otras partes del mismo estatuto y hasta otros estatutos *in pari materia* para determinar la intención y espíritu de una ley. En esta causa no es necesario ir más allá de los límites de artículo 14 mismo. Las contribuciones voluntarias por parte de un empleado no están prohibidas en ningún sentido. Si la legislatura deseaba prohibir toda clase de solicitación política, ¿por qué puso el innecesario preámbulo? En ese preámbulo la intención de la legislatura es la de que ninguna persona podrá ser separada o perjudicada por dejar de contribuir para fines políticos. Va contra la idea de que la legislatura deseaba castigar en aquellas circunstancias en que no se ejercitaba indebida presión sobre la voluntad del empleado como sucede en multitud de casos en que se piden contribuciones políticas. Los partidos políticos no pueden

funcionar sin fondos y aunque frecuentemente existen pro-
cedimientos indebidos no existe presunción de que los fondos
serán mal empleados.    El pedir a todos los miembros de un
partido que contribuyan con dinero para el éxito de una cam-
paña o la continuación de una organización es una proposi-
ción perfectamente lícita.    Si la solicitación es uniforme
ciertamente que no hay nada malo en incluir a miembros de
un partido que se encuentren por casualidad en el servicio
civil.    El daño que se trata de suprimir es aquella clase de
solicitación que tiende a crear en la mente de una persona
que está en el servicio civil el temor de que su negativa puede
dar lugar a su separación o perjudicarle en otro sentido.
No debe ponerse al empleado "en la obligación de contribuir."
La obligación no debe ser una que dé el temor de ser separado
o por la que se cause cualquier otro perjuicio.    Tales casos
de contribución obligada pueden ser muchos y variados pero
son susceptibles de ser expresados por el que la alega.

Cualquier duda que podamos tener acerca de esta inter-
pretación del estatuto tiene que desaparecer ante otras con-
sideraciones, o sea, la libertad de palabra y libertad de ac-
ción de cada individuo, garantizada por las instituciones
bajo las cuales vivimos y por la Constitución de los Estados
Unidos.    Tenemos fuertes dudas debido a estas limitaciones
constitucionales, de si la legislatura de Puerto Rico podría
prohibir absolutamente el solicitar contribuciones de los em-
pleados públicos para fines políticos.    Los casos que han sido
publicados sobre la materia no son muchos, pero estamos
seguros de que ninguna otra legislatura ha tratado de prc-
hibir todas las solicitaciones que se hacen a los empleados
públicos para fines políticos y la razón descansa en la liber-
tad fundamental del individuo.

La legislatura nacional se limitó a dos clases de casos,
a saber, la solicitación hecha por funcionarios a funcionarios
y las hechas dentro de edificios públicos, secciones 11 y 12
de la Ley de enero 16, 1883.    Cada una de estas secciones
ha sido sostenida por la Corte Suprema de los Estados Uni-

dos. *United States* v. *Curtis,* 106 U. S. 371; *United States* v. *Thayer,* 209 U. S. 39. En este caso la corte, por conducto del Juez Holmes, p. 42, dijo: "Los límites de la ley probablemente se debieron a lo que se consideraba la razonable y, posiblemente, la constitucional libertad de los ciudadanos, fueren éstos empleados públicos o no, en su vida privada, y puede presumirse que fué sobre esta base que se rechazó una enmienda de más amplios alcances."

Por otra parte, a pesar de que la cuestión de si el Congreso podía prohibir radicalmente las peticiones a empleados no estaba sometida a la consideración de la corte, las palabras usadas por el Sr. Juez Holmes son suficientes para indicar que la corte conjeturó que el motivo por el cual el Congreso no fué más lejos fué el temor de excederse en sus poderes constitucionales. La sección 12, considerada en el caso de Thayer, es como sigue:

"Sec. 12.—Que ninguna persona deberá, en cualquier habitación o edificio destinado al cumplimiento de deberes oficiales por cualquier funcionario o empleado de los Estados Unidos de los que se mencionan en esta ley, o en cualquier estación naval, fortaleza, arsenal, solicitar en ninguna forma o recibir cualquier contribución de dinero o alguna otra cosa de valor con cualquier fin político."

Como se ve, el estatuto prohibe en términos generales las peticiones hechas dentro de un edificio, sin especificar la clase de personas a las cuales no debe hacerse peticiones. Sin embargo, estamos convencidos de que si un ciudadano que no es un funcionario encuentra a otro como él en el edificio de correos y le pide que se suscriba a un fondo para fines políticos, tal ciudadano no es culpable de ningún delito de acuerdo con dicha sección. La corte estimaría que son las personas dentro del servicio civil las que intenta proteger el estatuto. Ese fué manifiestamente el punto de vista del abogado en el caso de *Thayer, supra,* pues la opinión demuestra que la acusación constaba de once cargos, todos ellos imputando el envío de cartas a los empleados. El abogado no creyó que era suficiente el seguir las palabras del estatuto.

También, la idea de que se trataba de la legítima protección de los empleados dentro del edificio se trasluce por la citación del anterior caso *Ex parte Curtis,* 106 U. S. 371. Todo el alcance de ese caso era el poder disciplinario del gobierno sobre sus funcionarios. Por la lectura de ese caso se ve también que existe una seria duda en cuanto al límite hasta el cual puede llegar la legislatura, duda que está acentuada en la opinión disidente del Sr. Juez Bradley.

En *McAuliffe* v. *Mayor etc. of City of Bedford,* 29 N. E. 517, se sostuvo una ordenanza que prohibía a los policías solicitar dinero o ayuda para fines políticos, y la corte, por medio del Juez Holmes, manifestó que el peticionario podría tener un derecho constitucional para tomar parte en la política pero que no tenía un derecho constitucional para ser un policía.

En *Louthan* v. *Commonwealth,* 52 A. R. 626, se declaró inconstitucional una ley que tendía a impedir a un funcionario el inducir directa o indirectamente a un elector capacitado a votar, o procurar que votase, en favor de un partido determinado, etc., y la corte consideró la ley como una infracción de los derechos personales y, según nuestro modo de entender la opinión, de la libertad de palabra.

En *State* v. *Pierce,* 158 N. W. 697, una ley de la legislatura prohibía a las personas que no eran candidatos salir fuera de su propio condado y gastar dinero allí con fines políticos, siendo la intención de la ley, opinamos nosotros, el impedir la introducción de dinero en distritos remotos.

La Corte Suprema de Wisconsin declaró la ley inconstitucional por infringir la libertad de palabra. Los siguientes son casos y autoridades sobre este punto: *In Re Sid Anderson et al.,* 5 A. & E. Annotated Cases, 421; *People* v. *Armstrong,* 73 Mich. 288; 6 R. C. L. 255; Nota 32 L. R. A. 829.

Si se ha de considerar este estatuto en su sentido absoluto podría ser declarado inconstitucional. En apoyo de su constitucionalidad, el Attorney General nos ha citado varios

casos en que un estatuto determinado fué sostenido dándole cierta limitación dentro del espíritu de la ley. *Woodward* v. *Fruitvale Sanitary District,* 34 Pac. 239; 41 N. H. 553, *State* v. *Smiley,* 67 L. R. A. 903, *Smiley* v. *Kansas,* 196 U. S. 447, *The Abby Dodge,* 223 U. S. 166, *Fox* v. *Washington,* 237 U. S. 273. El acepta que podrían suscitarse casos en que el acto de solicitar podría ser enteramente inocente y fuera del espíritu de la ley. La legislatura al aprobar esta ley, probablemente tuvo en cuenta la historia de la legislación en cuestiones de servicio civil y las decisiones de las cortes y deseó ir lo más lejos posible en la protección de los empleados públicos. Es el deber de la corte dar tal interpretación a una ley que salve su constitucionalidad. *El Pueblo de Puerto Rico* v. *Central Fortuna,* 22 D. P. R. 106 y casos citados; también los casos citados en esta opinión. Se ha sostenido además por la Corte Suprema de los Estados Unidos que, sin declarar una ley inconstitucional, la corte debería darle tal interpretación que la librara de serias dudas en cuanto a su constitucionalidad. *U. S.* v. *Delaware & Hudson Co.,* 213 U. S. 366, *Lewis Publishing Co.* v. *Morgan,* 299 U. S. 290, *The Abby Dodge,* 223 U. S. 175.

Dada la interpretación que nos creemos obligados a dar a la ley, resulta que no se imputó ningún delito público, por cuanto ni siquiera se intentó imputar que se trató de hacer una petición bajo las circunstancias expresadas por la ley. No hemos considerado aquí el asunto, pero, sin embargo, sería una buena alegación por parte del fiscal la de que el acusado hizo una petición sabiendo que la persona solicitada era un empleado público. *United States* v. *Carll,* 105 U. S. 612, *supra.*

Otro de los errores alegados fué que un maestro de escuela no está dentro del servicio civil. El podrá o no estar dentro del servicio civil clasificado, pero nos inclinamos a creer que no está en ningún otro ramo del servicio público que no sea el servicio civil.

La sentencia apelada debe ser revocada y absuelto el acusado.

*Revocada la sentencia apelada, y absuelto el acusado.*

Jueces concurrentes: Sres. Presidente Hernández y Asociado Aldrey.

Los Jueces Asociados Sres. del Toro y Hutchison disintieron.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. DEL TORO.

El presente es un caso sobre infracción a la ley para reglamentar y mejorar el Servicio Civil de Puerto Rico. La acusación, en lo pertinente, dice así: "Que en fecha anterior a la presentación de esta acusación o sea allá en uno de los días del mes de enero de 1916 y en la ciudad de Ponce, que forma parte del Distrito Judicial de Ponce, P. R., el acusado, Eduardo Wys, ilegal y voluntariamente solicitó de J. Federico Maura, que era entonces un empleado público, profesor graduado de instrucción pública, con el ejercicio en una de las escuelas de Ponce, una cuota o contribución de $30 para fines políticos." Y la ley infringida es como sigue: "Ninguna persona perteneciente al Servicio Civil de Puerto Rico tendrá obligación de contribuir con cuota alguna a fondos que se recaudaren con fines políticos, ni prestar servicios políticos; no pudiendo ser destituída, ni de otro modo perjudicada, por negarse a ello. Cualquiera persona que solicitare de los funcionarios públicos contribuciones de carácter político, incurrirá en pena de multa máxima de quinientos dólares, o en cárcel por un término que no excederá de seis meses, o ambas penas." Sección 14 de la ley para reglamentar y mejorar el Servicio Civil de Puerto Rico, aprobada en 1907.

El acusado alegó que era inocente, y celebrada la vista de la causa fué declarado culpable y condenado a pagar una multa de cien pesos y en defecto de pago a sufrir un día de cárcel por cada peso dejado de satisfacer, no excediendo la prisión de noventa días. No conforme con la sentencia, interpuso, por medio de su abogado Rafael R. Rivera Zayas, el

presente recurso de apelación.   Existe exposición del caso y pliego de excepciones.

La ilustrada representación del acusado alega la comisión por parte de la corte sentenciadora, de los siguientes errores:

"1. La corte inferior erró al declarar sin lugar la moción presentada por el acusado (p. 3) antes del juicio, solicitando la devolución de ciertos papeles privados, libros y otros bienes que habían sido obtenidos por medio de una orden de allanamiento ilegal y algunos de los cuales fueron presentados por el Fiscal, y admitidos por la corte, como prueba en contra del acusado.

"2. La corté cometió error al declarar sin lugar la moción presentada por el Presidente de la Junta Local del Partido Unión de Puerto Rico, con el mismo objeto que la anterior.

"3. La corte cometió error al declarar convicto al acusado en virtud de una acusación que no contiene hechos bastantes para constituir delito público; mediante prueba insuficiente por completo, y en virtud de una errónea interpretación y aplicación de la sección 14 de la Ley de Servicio Civil.

"4. La corte erró al declarar sin lugar la moción presentada por el acusado (p. 24) para que fuera eliminada la declaración del testigo Maura, por ser impertinente, así como toda la prueba obtenida ilegalmente y que fué presentada contra el acusado."

1 y 2. Con respecto a los dos primeros errores señalados, me limitaré a consignar que no figurando en los autos la orden de allanamiento que se alega que es ilegal, no hay base para llegar a conclusión alguna.

3. La argumentación del tercero de los errores señalados, se divide en tres partes, (*a*) insuficiencia de la acusación; (*b*) insuficiencia de la prueba, y (*c*) errónea interpretación y aplicación de la sección 14 de la Ley del Servicio Civil.

(a) Se sostiene que la acusación es insuficiente porque no se establece en ella que el profesor Maura era en el momento alegado en la acusación un empleado público adscrito al Servicio Civil de Puerto Rico, y porque tampoco se consigna en ella que el acusado supiera en el momento de la comisión del delito que el profesor Maura era un empleado público.

Como hemos visto, en la acusación se alegó que Maura "era entonces un empleado público, profesor graduado de instruc-

ción pública, con ejercicio en una de las escuelas de Ponce," y esto es bastante a mi juicio.

La sección 14 en su última parte no habla de "funcionarios o empleados públicos adscritos al servicio civil," sino de funcionarios y empleados públicos en general, y se comprende perfectamente que no sea necesaria tal especificación, porque en verdad todos los funcionarios o empleados públicos del Pueblo de Puerto Rico pertenecen al Servicio Civil, bien al clasificado, ya al no clasificado.

Con respecto al caso concreto de los profesores de instrucción pública, la sección 52 de la Ley Escolar Compilada, dice que: "Todos los maestros en servicio activo o los que posean un certificado que les dé derecho para enseñar serán considerados, durante el período de tiempo por el cual sea válido dicho certificado, como funcionarios o empleados del Gobierno Insular　*　*　*　"　Y la misma Ley del Servicio Civil, en su sección 4, último párrafo, prescribe que:

"El Servicio Civil Clasificado abarcará todas las plazas no comprendidas en el servicio no clasificado; *Disponiéndose, no obstante,* que el nombramiento y separación de los registradores de la propiedad, los miembros del cuerpo de la Policía Insular y los maestros y profesores de instrucción pública, seguirán rigiéndose por las leyes especiales vigentes en la materia; *Y disponiéndose,* que los maestros y profesores de instrucción pública serán considerados miembros del Servicio Civil Clasificado al efecto de ascensos en el Departamento de Instrucción."

Quiere decir que los profesores de instrucción pública en Puerto Rico en activo ejercicio o que posean un certificado válido para ejercer, son funcionarios públicos pertenecientes al Servicio Civil, clasificado al efecto de ascensos en el Departamento de Instrucción y no clasificado en los demás casos, aplicándose para su nombramiento y separación las leyes especiales del ramo a que dedican sus actividades.

Y en cuanto a que sea necesario alegar expresamente en la acusación que el acusado sabía en el momento de la comisión del delito que Maura era un empleado público, diremos que

tal alegación expresa sólo es necesaria cuando la ley también expresamente la exige. Atendida la redacción de la ley infringida en este caso, basta la fórmula general de haberse actuado ilegal y voluntariamente y la especificación de los elementos integrantes del delito que se imputa.

(*b*) La prueba fué completa, a mi juicio. Si bien no demuestra que en enero de 1916 el acusado por vez primera exigiera la suma de dinero que le entregó el profesor Maura, es lo cierto que acredita que con anterioridad Maura había sido insistentemente requerido para ello por el acusado. El acto delictivo no se cometió en verdad en un solo momento. Tuvo su período preparatorio y su período de consumación, pero puede sostenerse que el último reasumió y condensó en una sola transacción completa, perfecta, todas las gestiones anteriormente realizadas. Al presentarse el profesor Maura en la fecha especificada en la acusación en las oficinas de la junta local del partido político dominante en la administración municipal de Ponce, a satisfacer al acusado la cantidad anteriormente exigida repetidas veces por éste, el acusado con su actitud, con su aceptación, ratificó sus exigencias anteriores y de hecho solicitó actualmente la contribución prohibida por la ley.

(*c*) Sostiene el apelante que de acuerdo con la sección 14 de la Ley del Servicio Civil "no puede cometer el delito previsto por dicha sección ninguna persona que no sea miembro de una junta escolar, con facultades para nombrar y destituir maestros."

El apelante razona su contención así:

"Esta disposición legal gramaticalmente es una cláusula con dos proposiciones que entrelazadas nos dan la unidad de pensamiento uno y dominante de la cláusula.

"Este pensamiento dominante es el objetivo fundamental a que se dirige el interpretador legal para acertar y descubrir la intención del legislador que es la regla suprema en hermenéutica legal.

    *       *       *       *       *       *       *

"De acuerdo con estas reglas, la solicitación de que habla la sección 14 hay que interpretarla relacionándola con la parte anterior

de la sección en que habla de la no obligación en que está un empleado del Servicio Civil de contribuir para fines políticos y de que no puede ser destituído por su negativa. El empleado público no tiene la *obligación* de contribuir; luego puede hacerlo voluntariamente y así ha sido resuelto por este Hon. Tribunal en el caso del *Pueblo* v. *Torres,* 17 D. P. R. 87. Si el acto voluntario de contribuir no es un delito, no puede serlo tampoco el mero acto, desnudo de violencia o autoridad, de solicitar la voluntad del empleado para que realice un acto voluntario que la ley le permite realizar. La solicitación pues, tiene que ser de tal carácter que produzca en el ánimo del empleado la obligación de contribuir, borrando por completo la libre y espontánea manifestación de la voluntad. Y para que la obligación tenga un carácter coercitivo, debe hacerse por persona que tenga autoridad para nombrar o destituir al empleado, o que tenga tal intervención en el nombramiento y destitución del empleado, que si éste se negare, pudiera sufrir algún perjuicio o ser destituído.''

　　*　　　*　　　·　*　　　*　　　*　　　*　　　*

No estamos conformes con la contención del apelante. A nuestro juicio la sección 14 contiene varias prescripciones que pueden y deben subsistir e interpretarse independientemente.

Comienza el legislador por consignar que ninguna persona perteneciente al servicio civil tendrá obligación de contribuir con cuota alguna a fondos que se recaudaren con fines políticos, ni prestar servicios políticos, haciendo así posible que el cuerpo de empleados públicos pueda aislarse de toda actividad u obligación política y dedicarse por completo al cumplimiento de sus deberes para bien de la comunidad en que presta sus servicios. Y consigna algo más el legislador: Para garantizar esa actitud independiente por parte de los funcionarios, prescribe que si éstos se negaren a prestar servicios políticos o a contribuir a fondos que se recauden con fines políticos, no podrán ser destituídos. Esta disposición legal, como puede verse sin esfuerzo alguno, tiene vida por sí sola. Puede subsistir y aplicarse independientemente.

Pero el legislador fué más lejos. Penetrando en el campo de la realidad de los hechos, comprendió que para garantizar un servicio público independiente, no bastaba la prescripción anterior que hacía referencia a los funcionarios mismos. Era

necesario prohibir y castigar a los que se acercaran a ellos en solicitud de contribuciones para fines políticos, y así lo hizo por medio de una disposición que tiene también vida por sí sola. Si se suprimiera la primera parte de la sección 14, la segunda podría subsistir sin dificultad. Ella contiene un pensamiento completo.

Se ha dicho que si se diera la anterior interpretación a la sección 14, la segunda parte de la misma sería inconstitucional. No opinamos de ese modo. En su sabiduría la legislatura consideró perniciosa la práctica de solicitar contribuciones para fines políticos de los funcionarios públicos, y la prohibió. Actuó dentro de sus facultades. La generalidad del precepto prohibitivo no lo convierte por sí solo en inconstitucional. En la misma opinión de la mayoría se cita el caso de *United States v. Thayer,* 209 U. S. 39, en el cual se aplicó una ley que dispone, "que ninguna persona deberá, en cualquier habitación o edificio destinado al cumplimiento de deberes oficiales por cualquier funcionario o empleado de los Estados Unidos y de los que se mencionan en esta Ley, o en cualquier estación naval, fortaleza, arsenal, solicitar en ninguna forma o recibir cualquier contribución de dinero o alguna otra cosa de valor con cualquier fin político." Y si esa ley es constitucional, no vemos por qué no pueda serlo la disposición segunda de la sección 14 de la Ley del Servicio Civil de Puerto Rico, interpretada como lo hemos hecho independientemente.

Pero es más, aun reconociendo que la primera parte de la sección 14, muestre el espíritu a la luz del cual deba interpretarse y aplicarse su segunda parte, no creemos que sea este caso en que surge de todas las páginas del proceso que en las solicitaciones del acusado, empleado del comité local del partido que había elegido la Junta de Instrucción que debía nombrar al profesor Maura, iba envuelta la condición, sugestión o amenaza de que para continuar en su puesto sin dificultades, era necesario satisfacer la contribución que se solici-

taba, el apropiado para resolver con respecto a la constitucionalidad de la ley.   Si alguna vez llegara a esta corte una causa en la cual se hubiere acusado a una persona que hubiera actuado sin malicia de ninguna especie, entonces deberíamos entrar a estudiar y a resolver si tal caso podía considerarse comprendido dentro del estatuto o si éste era o no constitucional.

En el caso de *Woodward* v. *Fruitvale Sanitary District et al.*, la Corte Suprema de California dijo:

"\* \* \* Al decidir sobre la constitucionalidad del estatuto, no se requiere de nosotros que imaginemos alguna eventualidad posible en la cual sus disposiciones puedan estar en conflicto con la constitución o con otro estatuto, sino que determinemos si es que, en su alcance general y en la forma dispuesta para hacerlo cumplir, se encuentra dentro de las facultades del poder legislativo.   La Ley de marzo 7 de 1887 disponiendo la organización y régimen de distritos de regadío, repetidas veces se ha declarado constitucional (*Irr. Dist.* v. *Williams,* 76 Cal. 360, 18 Pac. 379; *Irr. Dist.* v. *De Lappe,* 79 Cal. 351, 21 Pac. 825; *In re Madera Irr. Dist.,* 92 Cal. 296, 28 Pac. 272); no obstante podemos concebir la formación de un distrito de regadío en virtud de aquel estatuto, con sus colindancias limitadas a las de una ciudad incorporada o a las de un distrito de terrenos pantanosos, en donde el riego produciría perjuicios y ningún beneficio.   Si surgiera ese caso, podría muy bien suceder que se declarara que los hechos demostraban que el caso no entraba en la razón de la ley y que por consiguiente no estaba sujeto a las disposiciones de la misma. Sin embargo no querría decir esto que la ley fuese anticonstitucional. \* \* \*" 99 Cal. 554, 562.

Y en el de *State* v. *Smiley,* la Corte Suprema de Kansas manifestó:

"No es cuestión que incumba a nosotros la de que la fraseología general de la ley en cuestión pueda aplicarse a personas que no debieran estar comprendidas en el mismo, y que pudieran tener derecho ante la corte para alegar que están exentas de sus disposiciones.   Los casos de esas personas pueden ser atendidos cuando se presenten en debida forma."   67 L. R. A. 903, 908.

Al confirmar la anterior decisión de la Corte Suprema de

Kansas, el Tribunal Supremo de los Estados Unidos, por medio del Juez Brewer, se expresó así:

"Puede concederse a los efectos de este caso que los términos en que está redactada la sección primera son lo suficientemente amplios para incluir actos que están fuera del alcance del poder de policía del Estado y el castigo de los cuales infringiría indebidamente la libertad de contratación. De todos modos no necesitamos entrar en la consideración de tal cuestión. La Corte Suprema del Estado decidió que los actos que se imputaran o probaran al acusado estaban claramente dentro de los términos de la ley, así como dentro del poder de policía del Estado; y que la ley podía sostenerse como una prohibición de aquellos actos irrespectivamente de la cuestión de si sus palabras eran lo suficientemente amplias para incluir actos y conducta que la legislatura no tendría el pleno derecho de restringir." 196 U. S. 447, 454.

4. No podemos convenir con el acusado en que la declaración del profesor de instrucción pública a quien se hizo la solicitud debió haber sido eliminada por la corte. Dicha declaración es la prueba más completa que presentó el Fiscal y si bien refiere muchos hechos anteriores a la comisión del delito, todos son de la misma naturaleza y están directa o indirectamente con él relacionados.

En cuanto a la admisión de los documentos que fueron ocupados en las oficinas del comité del partido político a que pertenece el acusado, basta repetir lo que dijimos al considerar los dos primeros errores señalados. Además, cuando la objeción se hizo, era ya demasiado tarde para que la corte pudiera indagar la forma en que habían llegado a la posesión del Fiscal los dichos documentos. Véase el caso de *El Pueblo* v. *Cerecedo,* 21 D. P. R. 62 y los citados en el mismo.

Por virtud de todo lo expuesto, procede la confirmación de la sentencia apelada.

Estoy autorizado para consignar que el Juez Sr. Hutchison ha leído esta opinión y está conforme con el tenor general de la misma.