UNITED STATES of America

v.

Dewey Victor BURLESON.

UNITED STATES of America

v.

Elmer Leonard DUGGAN.

Cr. Nos. 15658, 15659.

United States District Court,
E. D. Tennessee, N. D.
Dec. 15, 1954.

John C. Crawford, Jr., U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

Olen Henderson, Oak Ridge, Tenn., Hobart Atkins, Knoxville, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

In each of these cases, the defendant has filed a motion to dismiss the indictment on the ground that the same, when read with the bill of particulars, does not charge facts sufficient to constitute violations of the statutes alleged to have been violated. In both cases the indictments charge violation of Title 18 U.S.C.A. §§ 602 and 603. In the Burleson case, the indictment also charges violation of section 606. Whether the indictments are sufficient depends upon interpretation of the sections mentioned, with

particular attention to their decisive terms.

In substance, section 602 makes it unlawful for a person who receives salary or compensation from money derived from the Treasury of the United States to solicit, receive, or be concerned in any manner in soliciting or receiving a contribution from any other person of like character for any political purpose.

Section 603 prohibits solicitation or receipt by anybody of contributions in a Government building, or building occupied in whole or in part by Government employees, or persons compensated by money derived from the Treasury of the United States.

Section 606 prohibits pressuring of one Government-paid individual by another such individual with respect to political contributions. Relevant portions of this and the other two sections will be set out in their exact language as the pertinent questions are hereinafter presented.

Section 602 applies only to certain classified individuals. If defendants come within its purview, it is by reason of the following language: "Whoever, being * * * a person receiving any salary or compensation for services from money derived from the Treasury of the United States, * * *."

Defendants have been furnished bills of particulars, in which it is stated that defendants were employed by Edenfield Electric Company at Oak Ridge, Tennessee; that Edenfield was a sub-contractor with Maxon Construction Company; that Maxon was a prime contractor with United States Atomic Energy Commission for the construction of one of the latter's Oak Ridge plants, the contract being of the cost-plus-fixed-fee type; that funds were regularly advanced to Maxon by AEC on estimates and placed in an "advance account" by Maxon; that time cards for Edenfield's employees were presented to Maxon; that Maxon drew on the account for Edenfield, using Edenfield check forms and making the checks payable to the individual employees of Edenfield, Maxon in this respect acting as an administrative agency for Edenfield.

It is not stated in the bills of particulars at what bank or banks Maxon's accounts were carried. It is stated, however, that the advance made by AEC was by United States Treasury check; also, that funds so received by Maxon were allocated to various sub-contractors; that one allocation was set up as the Edenfield payroll account, and that Edenfield's employees were paid by checks drawn on this Edenfield account.

Counts of the indictments based upon section 602 in each case charge that defendant, "being a person receiving compensation for services from money derived from the Treasury of the United States," did the prohibited act or acts. As an employee of Edenfield, paid in the manner heretofore described, did defendant come within the class here described?

■ Presumptively all money in circulation was at some time in the United States Treasury and its numerous depositaries. It got into circulation through the process of expenditure by the Treasury. In a sense, all money in circulation is derived from the Treasury, as in a Biblical sense all living persons are derived from Adam and Eve. As an illustration, let it be supposed that a postal clerk employs a man to mow his lawn; that he cashes his Government check at a bank and pays his caretaker with money so received. Then suppose the caretaker pays his doctor with that money. At what point does the money cease to be money derived from the Treasury as salary or compensation for services? How many times must it change hands after the Government check is cashed before it loses its character as money derived from the Treasury? A rule of construction requires that a statute, if possible, be interpreted so as to avoid its being at war with common sense. United States v. Howell, 11 Wall. 432, 78 U.S. 432, 436, 20 L.Ed. 195. In United States v.

Kirby, 7 Wall. 482, 74 U.S. 482, at page 486, 19 L.Ed. 278, the court said: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence."

The words "derived from the Treasury of the United States" become more intelligible when considered in their context, which is permissible under a further rule of construction. United States v. Keitel, 211 U.S. 370, 386, 29 S.Ct. 123, 53 L.Ed. 230. That which is forbidden by section 602 is seen in the following portion of its language: "Whoever, being * * * a person receiving any salary or compensation for services from money derived from the Treasury of the United States, directly or indirectly solicits, receives, or is in any manner concerned in soliciting or receiving, any assessment, subscription, or contribution for any political purpose whatever, from any other such * * * person * * *." Significant words here used are "directly or indirectly." These words broaden the range of violation. But no comparable words are used with respect to the class of persons contemplated by the section. A reasonable inference is that the legislature intended that the words of violation be broadly construed, but otherwise as to the class. Had a broader range been intended for the class, the words necessary to accomplish that intent would have been "from money derived directly or indirectly from the Treasury."

Other significant words in the context are "salary or compensation for services." Services ordinarily are paid for by the party to whom they are rendered. Here defendants were working for a sub-contractor, who was performing work for a prime contractor, who was performing work for an agency of the Government. Had defendants received compensation for their services in the form of Treasury checks, or if they had been Government employees receiving compensation from a paymaster set up with Government funds to be adminis-

tered by the paymaster, there would have been some basis for construing section 602 as applicable to them. But neither of those situations existed. They worked for a subcontractor and received as compensation for services checks drawn on an account which had become money of the prime contractor and allocated to the subcontractor. In McBoyle v. United States, 283 U.S. 25, at page 27, 51 S.Ct. 340, at page 341, 75 L.Ed. 816 the court said: "Although it is not likely that a criminal will carefully consider the text of the law before he murders or steals, it is reasonable that a fair warning should be given to the world in language that the common world will understand, or what the law intends to do if a certain line is passed. To make the warning fair, so far as possible the line should be clear."

Section 602 is part of more comprehensive legislation. In reference to prior law on a portion of such legislation, the Supreme Court declared it as having for its purpose the checking of a political abuse. United States v. Thayer, 209 U.S. 39, 42, 28 S.Ct. 426, 52 L.Ed. 673. In everyday language, the abuse is called the shake-down system. As to who did the shaking down and thus made the law necessary, section 602 is informative. It reads, "Whoever, being a Senator or Representative in, or Delegate or Resident Commissioner to, or a candidate for Congress, or individual elected as, Senator, Representative, Delegate, or Resident Commissioner, or an officer or employee of the United States or any department or agency thereof, or a person receiving any salary or compensation for services from money derived from the Treasury of the United States, * * *" Those were the persons which the section sought to protect against. The persons intended to be protected were the subordinates, the unprotected individuals who worked in Government jobs. They are described in the section as officers, employees, or persons who receive their compensation from the Government.

**404**

■ As heretofore observed, these defendants and the persons they allegedly shook down were not employees of the Government. A statute should be construed in the light of its purpose. Holy Trinity Church v. United States, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226. Otherwise stated, it should be so construed as to give effect to the legislative intent. United States v. Alford, 274 U.S. 264, 47 S.Ct. 597, 71 L.Ed. 1040. Viewed in its larger context of Chapter 29, Title 18, §§ 591 to 612, it becomes apparent that section 602 does not undertake to protect every citizen who works on a Government construction job from the abuse of political squeeze. It does, however, intend to protect those who are employees or quasi-employees of the Government and in those classes easily exposed to the abuse of coerced political contributions. For this reason, these two defendants were dangerously close to the precipice of crime, though the Court is constrained to hold that in so far as section 602 is concerned they did not go over.

Section 603 provides that "Whoever, in any room or building occupied in the discharge of official duties by any person mentioned in section 602 of this title, * * * solicits or receives any contribution of money or other thing of value for any political purpose * * *" shall be punished as in the section provided. Each indictment contains a count charging that defendant in Building K–902 and Building K–791, K–33 Plant, "being buildings occupied in the discharge of official duties by officers and employees of the United States and by persons receiving compensation from money derived from the Treasury of the United States, solicited and received contributions of money for a political purpose." This alleged offense occurred on or about March 17, 1954.

It is stated in the bill of particulars as follows: "Buildings K–902 and K–791 were under construction on March 17, 1954, and were occupied by employees of the Edenfield Electric Company. During March and April, 1954, various employees of the Construction Division, United States Atomic Energy Commission visited the K–33 plant almost daily in the performance of their official duties of inspecting the construction work."

■ In any trial of the cases, the Government would be limited in its proof so as not to contradict what is here stated in the bill of particulars. United States v. Glasser, 7 Cir., 116 F.2d 690. The buildings were occupied by employees of Edenfield Electric Company. Persons within the classes listed in section 602 visited K–33 Plant, of which the two buildings aforesaid were portions. But to visit is not to occupy. "To occupy means to hold in possession; to hold or keep for use; as to occupy an apartment." Missionary Society of M. E. Church v. Dalles City, 107 U.S. 336, 343, 2 S.Ct. 672, 677, 27 L.Ed. 545; Corporation of the Catholic Bishop of Nesqually v. Gibbon, 158 U.S. 155, 168, 15 S.Ct. 779, 39 L.Ed. 931. In the light of the foregoing interpretation of the term "to occupy," neither the buildings nor the plant were occupied by any person described in section 602.

■ Count 2 of the Burleson indictment charges that defendant, "being a person receiving compensation for services from money derived from the Treasury of the United States, discharged and caused the discharge of and threatened to discharge and threatened to cause the discharge of Willard Edgar Killian, a person receiving his compensation for services from money derived from the Treasury of the United States, for withholding and neglecting to make a contribution of money for a political purpose." The indictment closely follows the language of section 606 and it is not necessary to quote the section itself.

The bill of particulars states that defendant and Killian were both employees of Edenfield, the sub-contractor. Under the reasoning with respect to counts under section 602, that based upon section 606 likewise fails.

When the indictments and bills of particulars are read together, it is apparent no crime is charged under any count of either indictment. Accordingly, an order will be prepared, dismissing both.